**Bernard H. TABOR, Appellant,**

v.

**William H. HARDWICK, Warden, U. S. Penitentiary, Atlanta, Georgia, Appellee.**

**No. 15477.**

United States Court of Appeals
Fifth Circuit.

July 22, 1955.

No appearance for appellant.

James W. Dorsey, U. S. Atty., Harvey H. Tysinger, Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before RIVES and CAMERON, Circuit Judges, and DAWKINS, District Judge.

On Petition for Rehearing.

RIVES, Circuit Judge.

On original hearing, we simply affirmed the judgment or order of the district court[1] without opinion. In so doing, we assumed, as apparently did the district court, that the appellant was simply asking the Court to instruct the warden as to the extent of his authority, not that he was seeking damages for a denial of his civil rights. Upon petition for rehearing, that assumption is attacked, and the appellant insists that the warden has already denied him the right to mail for filing a complaint in a civil action to the Clerk of the United States District Court in Detroit, Michigan, and that this action is for damages sustained by being deprived of his civil rights, citing 8 U.S.C.A. §§ 43 and 47(2).[*]

Upon careful examination of some of the averments of the complaint,[2] it would appear to be subject to either construction. Of course, any formal deficiency of the complaint should not prevent the court from considering the substance of appellant's case. Rice v. Olson, 324 U.S. 786, 791, 792, 65 S.Ct. 989, 89 L.Ed. 1367; Holiday v. Johnston, 313 U.S. 342, 350, 351, 61 S.Ct. 1015, 85 L.Ed. 1392.

Appellant in his brief takes the broad position that a federal prisoner cannot be denied access to courts for the purpose of filing civil actions, and relies upon a statement in a note in the 1952 edition of "Constitution of the United States, Revised and Annotated", of which Professor Edward S. Corwin was editor, at page 1137:

---

"Order of Court.

1. "Plaintiff has filed a petition in this Court, being his tenth petition of various kinds in which he makes complaint of various acts upon the part of the Warden.

"(1) He alleges he is preparing papers for submission to the United States District Court in Detroit, Michigan, to recover damages, but the Warden recently signed a memorandum advising applicant he could not file a civil action while an inmate. This Court can do nothing about that matter. If a petition is prepared it is assumed the Warden will allow applicant to send it to the Court where it is intended to be filed.

"(2) He complains the Warden forbids plaintiff to have or make use of law books, etc. This Court has been advised there is a regulation that prisoners may not keep law books in their cells, but they may have reasonable access to same in the library. This is a matter of prison discipline over which this Court has no control, unless there is some restriction over the prisoner preventing him from prosecuting an action in this Court.

"(3) The applicant moves this Court to issue an order upon the defendant calling upon him to modify the restriction as to use of applicant's law books, and his other order, 'or plaintiff be compensated for the amount of $10,000.00.' This is not an action for damages.

"Applicant's complaint is ordered filed in forma pauperis and is dismissed."

[*] Now 42 U.S.C.A. §§ 1983, 1985.

2. "The plaintiff is preparing the necessary and proper proceedings for submittance to the United States District Court, Detroit, Michigan, to recover damages from one Sam L. McCorkle, a citizen of the State of Michigan, City of Detroit, which exceeds three thousand dollars.

"The aforesaid warden, William H. Hardwick, recently signed a memorandum which stated:

"'I am returning to you what is purported to be a civil action for damages. You cannot file a civil action while an inmate of this institution.

"'/s/ W. H. Hardwick
"'Warden'

\* \* \* \* \*

"Plaintiff moves this Honorable Court must define the power and limit the authority of W. H. Hardwick (warden). It cannot be that aforesaid warden's authority is above the law of the land that empowers the right and privilege to institute legal proceedings in this Honorable Court, the plaintiff's rights are being destroyed or irremediably vitiated, if the warden has this authority then every prisoner's legal actions may become paralyzed.

\* \* \* \* \* \*

"Therefore plaintiff moves this Honorable Court to issue appropriate order upon W. H. Hardwick, calling upon him to modify this restriction as stated in the aforesaid memorandum, and his order issued November 12, 1954, or plaintiff be compensated for the amount of ten thousand dollars."

"Access to the Courts.—A state prison regulation requiring that all legal papers sought to be filed in court by inmates must first be submitted to the institution for approval and which was applied so as to obstruct efforts of a prisoner to petition a federal court for a writ of habeas corpus is void. Whether a petition for such writ is properly drawn and what allegations it must contain are questions which a federal court alone determines.[1] Equally subject to condemnation is the practice of the warden of a State penitentiary who denied prisoners access to the courts unless they procured counsel to represent them.[2]

"1. Ex parte Hull, 1941, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034.

"2. White v. Ragen, 1945, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348, note 1 (1945)."

Ex parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034, holds that a prison regulation restricting the right of an inmate to apply for habeas corpus is invalid. The White v. Ragen, footnote citation, 324 U.S. at page 762, note 1, 65 S.Ct. at page 980, contains only the following observation:

"It also has come to the attention of this Court that for some years the warden of the Illinois State Penitentiary, contrary to Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034, denied the rights of prisoners to access to the courts unless they procured counsel to represent them. See United States ex rel. Foley v. Ragen, D.C., 52 F.Supp. 265, [reversed] 7 Cir., 143 F.2d 774; United States ex rel. Bongiorno v. Ragen, D.C., 54 F.Supp. 973."

The above observation, however, was more or less dicta applicable only to an inmate's right to file habeas corpus, as distinguished from his right to file an ordinary civil action for damages, and the decision turned principally on the question of exhaustion of state remedies. Substantially in accord with these two decisions are other Supreme Court cases holding that a convict prevented by prison authorities from appealing his conviction has a remedy via habeas corpus. See Cochran v. State of Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453; Dowd v. U. S. ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215.

There are other authorities which may indicate that, apart from prison discipline and restrictions imposed by statute, there is no inhibition to the filing of civil suits by prisoners. See Hardin v. Dodd, 176 Ga. 119, 167 S.E. 277; Scott v. Scott, 192 Ga. 370, 15 S.E. 416, 417; People v. Gutterson, 244 N.Y. 243, 155 N.E. 113; Panko v. Endicott Johnson Corp., D.C., 24 F.Supp. 678; cf. Beck v. Downey, 9 Cir., 191 F.2d 150, reversed on other grounds 343 U.S. 912, 72 S.Ct. 646, 96 L.Ed. 1328; Id., 198 F.2d 626; 18 C.J.S., Convicts, §§ 4, 7, pp. 103, 105; 16 Am.Jur., Death, Sec. 9, p. 15. As evidence, however, that prison discipline as customarily applied may prevent the filing of many civil actions, we note that some states by statute exempt prisoners from the running of statutes of limitations during their terms of imprisonment, and preserve for them their right to bring such actions within a specified period after the disability occasioned by their imprisonment terminates. See 54 C.J.S., Limitations of Actions, § 241, p. 268; 34 Am.Jur., Limitation of Actions, Sec. 214, p. 171; 14 A.L.R. 339; see also Francis v. Lyman, D.C.Mass., 108 F. Supp. 884, 885; Gordon v. Garrson, D.C. Ill., 77 F.Supp. 477, 480.

And in those jurisdictions which recognize imprisonment as depriving a penitentiary inmate of his legal capacity to sue, probably neither laches nor prescription would bar timely assertion of a claim by him after the imprisonment causing his disability ceases. See 30 C.J.S., Equity, § 122, p. 546; 19 Am.Jur., Equity, Sec. 503, p. 348; Id., Sec. 507, pp. 351, 352. In the instant case it appears that Michigan, where appellant seeks to file his civil suit and which law would presumably govern, is among those jurisdictions which expressly recognize and make allowance for his present disability.

Sec. 609.15 of Vol. 4, Compiled Laws of Michigan (1948) providing in pertinent part as follows:

"If any person * * * at the time when the cause of action accrues, be within the age of 21 years insane, or imprisoned in the state prison, such person may bring the action within the times in this chapter respectively limited, after the disability shall be removed." [3]

We do not question the wisdom of the rule recognized by such decisions as Ex parte Hull and White v. Ragen, supra, that penitentiary inmates ought to have their right to inquire into the validity of their restraint of personal liberty and freedom zealously safeguarded by the courts, but we think that the principle of the cases so holding should not be extended to give them an absolute and unrestricted right to file any civil action they might desire. Otherwise, penitentiary wardens and the courts might be swamped with an endless number of unnecessary and even spurious law suits filed by inmates in remote jurisdictions in the hope of obtaining leave to appear at the hearing of any such case, with the consequent disruption of prison routine and concomitant hazard of escape from custody. As a matter of necessity, however regrettable the rule may be, it is well settled that, "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356. The control of federal penitentiaries is entrusted to the Attorney General of the United States and the Bureau of Prisons, who, no doubt, exercise a wise and humane discretion in safeguarding the rights and privileges of prisoners so far as consistent with effective prison disci-

pline. Unless perhaps in extreme cases, the courts should not interfere with the conduct of a prison or its discipline. Adams v. Ellis, 5 Cir., 197 F.2d 483, 485; Dayton v. McGranery, 92 U.S.App.D.C. 24, 201 F.2d 711, 712; Stroud v. Swope, 9 Cir., 187 F.2d 850, 851; certiorari denied, 342 U.S. 829, 72 S.Ct. 53, 96 L.Ed. 627; Sturm v. McGrath, 10 Cir., 177 F.2d 472, 473; Powell v. Hunter, 10 Cir., 172 F.2d 330, 331. Certainly, we may not with propriety assume, absent a more convincing showing than here exists, that penitentiary inmates are being arbitrarily denied the right to bring bona fide lawsuits conceived in good faith, especially in those jurisdictions where limitations, laches or prescriptions may be running against them during the periods of their confinement.

In the present case, the averments of the complaint (footnote 2, supra) are so vague and uncertain as to lead the district court to the conclusion that, "This is not an action for damages." Assuming it to be such an action, it discloses no foundation for the proceedings "to recover damages from one Sam L. McCorkle" which appellant desires to submit to the United States District Court in Detroit, Michigan. If that proceeding is apparently in good faith and the filing of it is consistent with prison discipline, we agree with the assumption of the district court that, " * * * the warden will allow applicant to send it to the court where it is intended to be filed." We do not think that the general averments of the present complaint show any abuse of discretion on the part of the warden, and we therefore hold that the complaint does not state a claim upon which relief can be granted. It will be time enough to pass on a more extreme case if and when it should arise. The petition for rehearing is therefore denied.

Denied.

3. A somewhat similar statute in Georgia, where appellant is imprisoned, also provides:

"Persons under disability.—Infants, idiots, or insane persons, or persons imprisoned, who are such when the cause of action shall have accrued, shall be entitled to the same time, after the disability shall have been removed, to bring an action, as is prescribed for other persons." Title 3, Sec. 801, Ga.Code Ann.