Thomas **COOPER**, Petitioner-Appellant,

v.

Frank J. **PATE**, Warden, et al., Respondents-Appellees.

No. 14127.

United States Court of Appeals
Seventh Circuit.

Nov. 5, 1963.

Thomas Cooper, in pro. per.

William G. Clark, Illinois' Atty. Gen., Chicago, Ill., William C. Wines, Raymond S. Sarnow, Aubrey F. Kaplan, Daniel Kadjan, Asst. Attys. Gen., of counsel, for appellee.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

■ The plaintiff's complaint is styled by him "Petition for Relief Under Civil Rights Act," and alleges that the defendant, Frank J. Pate, Warden of the State Penitentiary, where plaintiff is confined, and the defendant, Joseph E. Ragen, the Illinois Director of Public Safety, "will not allow petitioner to purchase" certain religious publications and materials disseminated by the Black Muslim Movement.

Plaintiff alleges he is being "segregated" and being deprived of his rights to worship "in violation of certain provisions of the laws of Illinois and of the Fourteenth, Fourth and Eighth Amendments to the Constitution of the United States." He claims he is discriminated against because other prisoners may obtain the King James and Revised versions of the Bible, and he is unable to obtain a copy of the "Quran."

■ The Attorney General for the State of Illinois asks us to take judicial notice of certain social studies which show that the Black Muslim Movement, despite its pretext of a religious facade, is an organization that, outside of prison walls, has for its object the overthrow of the white race, and inside prison walls, has an impressive history of inciting riots and violence.

In the District Court, the plaintiff's cause was dismissed on motion of the defendants. Thereafter, plaintiff was permitted to file a notice of appeal in this Court in forma pauperis, and the record on appeal was filed in this Court without the payment of costs. The case was submitted to us on the briefs and without oral argument.

Plaintiff's principal complaint seems to be that he was placed in solitary confinement because he insisted upon obtaining a Muslim bible, termed by him "Quran" and language books "Arabic" and "Swahli." At another point, plaintiff insists "that he be permitted to obtain the Holy Quran from * * * [a bookstore in New York] * * * translated by Muslana Muhammad Ali."

The probable basis for plaintiff's trouble with prison officials appears in his statement " * * * Then warden [Joseph E. Ragen] * * * confided * * * he feared I was an organizer and had ulterior motives. * * * I was always surrounded by * * * hundred to 150 inmates, (mostly colored and Mexican) * * *. He feared that I and my associates would be able to control his prison."

We consider first whether we should take judicial notice of official or otherwise accredited social studies of the Black Muslim Movement. We have distinguished authority for so doing. In Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 99 L.Ed. 873, the Supreme Court overturned Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, and held the Equal Protection clause of the Fourteenth Amendment prohibited segregation in public schools although the two races were given "equal" facilities, etc. The Court relied upon accredited social studies and took judicial notice thereof, citing them at length and digesting them in footnotes.

In West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, the Court overruled Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785, and held constitutional state laws fixing a minimum wage for women. In writing the opinion, Chief Justice Hughes took judicial notice of, and accepted social economic studies on, the effect of a depressed wage level upon the health and lives of women workers.

In Beauharnais v. People of State of Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919, the famous "White Circle League" case, a question of federal constitutional law was presented in which the right of freedom of speech collided with the right of a state to prevent or minimize interracial violence. Again, the opinion of the Court cites and summarizes in footnotes, certain social studies.

Under the ruling of the Beauharnais case, supra, it seems clear that Illinois may suppress movements that would otherwise be constitutionally protected when

they have violence as their object or an even reasonably likely consequence; further, that the Supreme Court of the United States will take judicial cognizance of authoritative racial studies precisely as though their content had been admitted as evidence in the case.

On May 24, 1962, the Security Section, Intelligence Division, Bureau of Inspectional Services, of the Chicago Police Department, completed an official study entitled "Muslim Cult of Islam—Nation of Islam, 5335 So. Greenwood Ave., Chicago, Illinois." The complete report is reprinted in the Government's Appendix in the instant case.

The study declares at page 3, "Federal and State prisons continue to have serious problems involving Muslim inmates. The State Prison in Fulton, New York, has a 50% Negro population. Twenty-five percent of this number claim Muslim membership insisting on religious recognition and special privileges which would obviously break down discipline. Muslim violence also took place at Federal prisons in Terre Haute, Ind., and at Atlanta, Ga. Stateville and Joliet penitentiaries in Illinois continue to have some Muslim activity amongst their inmates. This situation is being closely observed to contain any incident that could arise. * * *"

The United States Supreme Court has recognized that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356.

This Court considered the matter of discipline of inmates in state institutions in several cases. In United States ex rel. Morris v. Radio Station WENR, 7 Cir., 209 F.2d 105, at page 107, we stated: "Inmates of State penitentiaries should realize that prison officials are vested with wide discretion in safe-guarding prisoners committed to their custody. Discipline reasonably maintained in State prisons is not under the supervisory direction of federal courts. Kelly v.

Dowd, supra [7 Cir., 140 F.2d 81]. 'We think that it is well settled that it is not the function of the courts to superintend the treatment and discipline of prisoners in penitentiaries, but only to deliver from imprisonment those who are illegally confined.' Stroud v. Swope, Warden, 9 Cir., 187 F.2d 850, 851. A prisoner may not approve of prison rules and regulations, but under all ordinary circumstances that is no basis for coming into a federal court seeking relief even though he may claim that the restrictions placed upon his activities are in violation of his constitutional rights." See also, Siegel v. Ragen, 7 Cir., 180 F.2d 785; Morris v. Igoe, 7 Cir., 209 F.2d 108, and United States ex rel. Atterbury v. Ragen, Warden, 7 Cir., 237 F.2d 953.

In re Ferguson, 55 Cal.2d 663, 12 Cal. Rptr. 753, 361 P.2d 417, has been cited as possible authority supporting the contentions of Cooper. It is true that the California court stated (12 Cal.Rptr. 758, 361 P.2d 422): " * * * Even as prisoners, petitioners have the absolute right to possess their Muslim beliefs. * * * Nor may petitioners be punished for holding their Muslim beliefs." However, that Court further stated: "But assemblying and discussing the inflammatory Muslim doctrines in a prison situation must be considered to be such action, even though 'religious,' which may be reasonably regulated by the Director of Corrections."

In Ferguson, the Court also said (12 Cal.Rptr. 757, 361 P.2d 421): "However, it is apparent that the Muslim beliefs in black supremacy and their reluctance to yield to any authority exercised by 'some one [who] does not believe in [their] God,' present a serious threat to the maintenance of order in a crowded prison environment."

In our view, the action of the District Court in denying the petition [complaint] of Thomas Cooper " * * * for relief under the Civil Rights Act" was correct.

The judgment of dismissal is

Affirmed.