360 F.2d 66
 Henry E. WALKER, Appellant,
v.
Olin G. BLACKWELL, Warden, United States Penitentiary, Atlanta, Georgia, Appellee.
Raymond X. THOMAS, Appellant,
v.
Olin G. BLACKWELL, Warden, United States Penitentiary, Atlanta, Georgia, Appellee.
George 6X-Edward NIXON, Appellant,
v.
Olin G. BLACKWELL, Warden, United States Penitentiary, Atlanta, Georgia, Appellee.
William C. X. RINDGO, Jr., Appellant,
v.
Olin G. BLACKWELL, Warden, United States Penitentiary, Atlanta, Georgia, Appellee.
Armstead D. GOULD, Appellant,
v.
Olin G. BLACKWELL, Warden, United States Penitentiary, Atlanta, Georgia, Appellee.
Robert X. SCRIBER, Appellant,
v.
Olin G. BLACKWELL, Warden, United States Penitentiary, Atlanta, Georgia, Appellee.
Roland X. GHEE, Appellant,
v.
Olin G. BLACKWELL, Warden, United States Penitentiary, Atlanta, Georgia, Appellee.
Robert II X-GRAY, Appellant,
v.
Olin G. BLACKWELL, Warden and M. J. Elliott, Assistant Warden, Atlanta Federal Penitentiary, Appellees.
 Nos. 22374-22379.
 No. 22446.
 No. 22455.
 United States Court of Appeals Fifth Circuit.
 April 7, 1966.
 
 1
 Henry E. Walker, pro se.
 
 
 2
 F. D. Hand, Jr., Asst. U. S. Atty., Atlanta, Ga., Charles L. Goodson, U. S. Atty., for appellee.
 
 
 3
 Robert II X-Gray, pro se.
 
 
 4
 Before BROWN and COLEMAN, Circuit Judges, and GARZA, District Judge.
 
 
 5
 GARZA, District Judge.
 
 
 6
 Appellants filed pro se in the district court substantially identical petitions styled "Motions for Mandatory Injunctions" which were actions in the nature of mandamus, alleging that Appellants are confined in the United States Penitentiary at Atlanta, Georgia, that they are Muslims and their religion is Islam, and that they have been harassed and denied the right to worship and practice their religion by Appellee, the warden of the penitentiary.
 
 
 7
 The complaints were dismissed for lack of jurisdiction, the district court holding that the civil rights statutes relied upon by Appellants, 28 U.S.C. § 1343 and 42 U.S.C. §§ 1983-1985, provide a remedy for deprivation of civil rights only under color of law of a "state or territory".
 
 
 8
 The cases were consolidated for appeal and present the question of whether the district court was correct in dismissing these actions for the reason stated, or whether it had jurisdiction on some other basis.
 
 
 9
 Appellants alleged that the warden had not permitted them to practice the religion of Islam to the same extent as other prisoners of different faiths were allowed to practice their religions, and asked that the warden be enjoined from denying to them the right to practice the religion as taught by Elijah Muhammad, to wear a religious medal or ring, to receive the newspaper "Muhammad Speaks", prayer books and other literature, to correspond with Elijah Muhammad or his ministers, to listen to Muhammad's radio program, to observe the dietary laws of the Islamic religion, to be furnished with a time and a place in the penitentiary to worship, to receive Elijah Muhammad or his ministers to conduct services in the penitentiary, and to be furnished copies of the "Holy Quran".
 
 
 10
 Since these complaints relate to the administration of a United States penitentiary by a federal official, we agree with the district court that they could not be maintained under 42 U.S.C. § 1983. However, we believe, and the Government concedes,[1] that these complaints state causes of action against a federal official under 28 U.S.C. § 1361,[2] and they will be remanded to the district court for further proceedings.
 
 
 11
 We begin our belief discussion of some of the criteria established in the treatment of such cases, with the oft-quoted phrase by the United States Supreme Court in Price v. Johnston, 334 U.S. 266 at 285, 68 S.Ct. 1049 at 1060, 92 L.Ed. 1356:
 
 
 12
 "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."
 
 
 13
 In our case of Tabor v. Hardwick, 224 F.2d 526, 5 Cir., 1955, Judge Rives stated for this Circuit:
 
 
 14
 "The control of federal penitentiaries is entrusted to the Attorney General of the United States and the Bureau of Prisons, who, no doubt, exercise a wise and humane discretion in safeguarding the rights and privileges of prisoners so far as consistent with effective prison discipline. Unless perhaps in extreme cases, the courts should not interfere with the conduct of a prison or its discipline." (Citations omitted.) 224 F.2d at 529.
 
 
 15
 In similar cases involving state penitentiaries, the federal courts have recognized that prison discipline is an executive function with which the judicial branch ordinarily will not interfere, but have upheld the right to relief from religious persecution.
 
 
 16
 The Second Circuit has dealt with this problem on several occasions, and the district court for the Southern District of New York stated in United States ex rel. Washington v. Fay, 217 F.Supp. 931, D.C.N.Y.1963, that thirteen suits were filed by Muslims in the Northern District of New York by state prisoners, five in the Western District, and several in the New York state courts.
 
 
 17
 In Pierce v. LaVallee, 293 F.2d 233, 2 Cir. 1961, the court remanded for trial an extreme case in which it was alleged that prisoners were being punished solely because of their religious beliefs.
 
 
 18
 "Whatever may be the view with regard to ordinary problems of prison discipline, however, we think that a charge of religious persecution falls in quite a different category. See Marsh v. State of Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265; Follett v. Town of McCormick, S.C., 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938, 152 A.L.R. 317; Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, 146 A.L.R. 81. As the Supreme Court has there pointed out, freedom of religion and of conscience is one of the fundamental `preferred' freedoms guaranteed by the Constitution. We must approach decision with that admonition in mind." 293 F.2d at 235.
 
 
 19
 The ultimate disposition of Pierce involved no interference by the court with prison discipline. Pierce v. La Vallee, 319 F.2d 844, 2 Cir. 1963; cert. den. 374 U.S. 850, 83 S.Ct. 1913, 10 L.Ed.2d 1070, 1963.
 
 
 20
 Exhibits and testimony in the trial record were summarized in detail by the court in Sostre v. McGinnes, 334 F.2d 906, 2 Cir. 1965; cert. den. 379 U.S. 892, 85 S.Ct. 168, 13 L.Ed.2d 96. In its discussion of many cases involving "Black Muslims", the court paints a sorded picture of the movement's history of violence and threat to prison discipline, caused primarily by its teachings of racial hatred as an essential part of the faith. After conceding that the Muslim group has some characteristics of a religious sect, the court states:
 
 
 21
 "No romantic or sentimental view of constitutional rights or of religion should induce a court to interfere with the necessary disciplinary regime established by the prison officials." 334 F.2d at 908.
 
 
 22
 "The problem presented by the Muslim group is not whether they should be permitted to have congregational services, a minister, religious literature, but rather, under what limitations protective of prison discipline they should be permitted these rights." 334 F.2d at 911.
 
 
 23
 Apparently the officials at the Atlanta penitentiary have had unhappy experiences with their Muslim inmates in the past. The Seventh Circuit, in Cooper v. Pate, 324 F.2d 165, 7 Cir. 1963, an action by an Illinois state prisoner, took judicial notice of offical or accredited social studies of the Black Muslim Movement, one of which stated:
 
 
 24
 "Federal and State prisons continue to have serious problems involving Muslim inmates. * * * Muslim violence also took place at Federal prisons in Terre Haute, Ind., and at Atlanta, Ga.," 324 F.2d at 167.
 
 
 25
 The court proceeded to affirm the district court's judgment of dismissal for failure to state a claim on which relief could be granted, but was reversed per curiam by the Supreme Court which stated:
 
 
 26
 "Taking as true the allegations of the complaint, as they must be on a motion to dismiss, the complaint stated a cause of action and it was error to dismiss it. See Pierce v. LaVallee, 293 F.2d 233 (C.A. 2d Cir.); Sewell v. Pegelow, 291 F.2d 196 (C.A. 4th Cir.)."
 
 
 27
 Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030, 1964.
 
 
 28
 The Sewell case cited by the Supreme Court, as well as Fulwood v. Clemmer, 111 U.S.App.D.C. 184, 295 F.2d 171, 1961, allowed federal prisoners sentenced in the District of Columbia to bring similar actions on the theory that the District of Columbia is a state or territory within the civil rights statute, 42 U.S.C. § 1983.
 
 
 29
 A federal prisoner at the Lewisburg, Pennsylvania, penitentiary brought an action to enforce his alleged rights as a Muslim, and the parties agreed that it should be considered as a civil action under 42 U.S.C. § 1983. Desmond v. Blackwell, 235 F.Supp. 246, D.C.Pa.1964. The district court, after noting the movement's impressive history of inciting riots and violence, found that the administration of the prison by the responsible authorities was reasonable, justifiable and neither arbitrary nor capricious, and the petition was denied, after hearing. The court quotes from the opinion of District Judge Brennan in Pierce v. La Vallee, 212 F.Supp. 865, 869, D.C. N.D.N.Y.1962:
 
 
 30
 "In our zeal for the protection of freedom of religious belief and practice, the particular circumstances involved may not be overlooked. A large prison population is committed to the custody of a minority of prison employees and authorities. Discipline is necessary for the protection of both the inmates and the public. Prison discipline may on occasions impinge upon fundamental rights. That a public officer has or will violate the constitutional safeguards of the freedom of religion, in this court's opinion must be established by convincing evidence. Such a charge is easy to make in an unverified complaint but the charging party must support it by more than inference or conjecture."
 
 
 31
 We conclude, therefore, that the district court should grant a hearing to these Appellants, each of whose petitions states a cause of action under 28 U.S.C. § 1361. The judge can then determine if the prison officials have violated Appellants' right to possess their Muslim beliefs and if the rules and regulations imposed on these prisoners are reasonable and justifiable in the administration of a large prison population, maintenance of discipline, and control of any dangers and hazards presented.
 
 
 32
 We note that at least two of the Appellants have been transferred from the Atlanta penitentiary, and on remand the district court may determine that their cases are moot.
 
 
 33
 The judgments of dismissal are reversed and the cases are remanded for further proceedings not inconsistent herewith.[3]
 
 
 
 Notes:
 
 
 [1]
 Pursuant to our request, the Attorney General of the United States filed a supplemental memorandum for Appellee containing an exhaustive discussion of the jurisdictional question presented here
 
 
 [2]
 § 1361. Action to compel an officer of the United States to perform his duty
 The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.
 
 
 [3]
 Subsequent to submission the Appellants moved to file an amendment to the complaint and request this Court to dispose of it on its merits. This motion is denied but without prejudice to the opportunity of filing in the trial court on remand such amendments or other pleadings as may be appropriate and permissible
 
 
 
 34
 COLEMAN, Circuit Judge (dissenting).
 
 
 35
 I have never been, and am not now, a believer in judicial dissent for the mere sake of dissent. These cases raise, presently and potentially, such serious questions affecting the power of the United States to administer and control its prisons that I feel compelled to state the reasons which make it impossible for me to join in reversing the District Court.
 
 
 36
 I agree that when one presents in his own behalf a petition which clearly merits some relief, he ought not to fail solely because he misconceives the nature of the proceeding or mislabels his petition. The court does have the discretionary right to treat a petition according to its substantive values, despite the fact that an untutored petitioner has mistakenly designated it as a petition for a clearly unavailable form of relief. Roberts v. Pegelow, 4 Cir., 1963, 313 F.2d 548, 550. Note, however, that the petition must clearly merit some relief and the right to treat the petition according to its substantive values, under such circumstances, is discretionary. I do not believe the petitions here clearly merit relief, nor do I feel that the District Court abused its discretion in failing to consider these petitions as if brought under 28 U.S.C.A. § 1361. The petitions were brought under the Civil Rights statutes, clearly inapplicable, and there was no suggestion from any source that the District Judge consider them under Section 1361. This is an afterthought, raised for the first time in this court. And at that, the Government, in a memorandum which we requested, states that the applicability of 1361 is "not free from doubt".
 
 
 37
 Laying aside the matter of the District Court acting of its own volition, it has been held that for relief to be granted under this section conferring original jurisdiction upon federal courts to compel an officer or employee of the United States to perform a duty it must be originally relied upon in the trial court, and such contention cannot be invoked for the first time on appeal to sustain jurisdiction. Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, 10 Cir., 1963, 331 F.2d 767.
 
 
 38
 In its supplemental memorandum, the Government states, "although the matter is not free from doubt, we conclude that Section 1361 of Title 28 authorizes such suits and permits the district courts to entertain them." In my view, any concession by the Government involving so serious a matter as the safe and orderly administration of its penal facilities, although entitled to serious consideration, nevertheless leaves us free as a Court to exercise our judgment in the matter, particularly when the concession confesses doubt at the outset.
 
 
 39
 In the absence of arbitrary mistreatment or clear deprivation of constitutional rights which could be observed without danger to peace, safety, and efficient administration, I believe that it is not, and should not become, the business of the courts to work out, revise, or supervise, the administration of rules and regulations governing any activity, religious or otherwise, in any prison, state or federal, Sostre v. McGinnes, 2 Cir., 1964, 334 F.2d 906, 911. I emphatically agree with what this Court said in Tabor v. Hardwick, 224 F.2d 526, 529, that "unless perhaps in extreme cases, the courts should not interfere with the conduct of a prison or its discipline (citing numerous cases)." Conceding the possibility, although not the probability, that such extreme cases might arise in the highly enlightened methods by which the modern federal penal system is administered, I can see nothing to justify judicial intercession in the cases now before us.
 
 
 40
 I strongly agree with what was said in Roberts v. Pegelow, supra:
 
 
 41
 "Since management of the penal institutions has been placed by the Congress in the Executive Department, and the Executive Department is solely responsible for the security of the prisoners and of the officials and others working within the prison, they must be allowed to exercise a largely unfettered discretion in deciding what security measures are appropriate and, with respect to each prisoner, what relative freedom he safely may be allowed. If one is given greater freedom of movement than another, or if one becomes a trusty, while many do not, such routine matters of prison administration ought not to become the subject of judicial controversy."
 
 
 42
 In that case, the Court further stated that so long as prison imposed punishment is not so unreasonable as to be characterized as vindictive, cruel, or inhuman, there is no right of judicial review of it. The language speaks of punishment, but the principle should equally be applicable to any element of prison control and administration.
 
 
 43
 Leaving aside any question of improvident judicial interference with functions exclusively committed to the discretion of the Executive Department, we should not overlook the significant consideration that we are here talking about the use of a mandamus statute. The statute provides that the action shall be "in the nature of mandamus". The use of this language by the Congress was really inescapable because the action is to be invoked "to compel" the performance of a duty owed to the plaintiff. The statute confers no jurisdiction on any court to either direct or influence the exercise of discretion properly vested in any officer or agency of the United States. Seebach v. Cullen, 224 F.Supp. 15, 338 F.2d 663, cert. den. 380 U.S. 972, 85 S.Ct. 1331, 14 L.Ed.2d 268. The law could not possibly be otherwise, unless the judiciary wishes to take unto itself, in the ultimate, the functions of the Executive Department.
 
 
 44
 In Sostre v. McGinnis, supra, in which the prisoner petitioners were "Muslim" inmates of a state penitentiary, the court said:
 
 
 45
 "It is of little use for us to announce that because of the religious content of the Muslims' beliefs and practices they must be given the right, even in prison, to follow the dictates of their faith, if we find it necessary immediately to add, `Of course all these rights are subject to such reasonable rules and regulations as the authorities impose.'"
 
 
 46
 This is the nub of the whole matter and makes mandamus, in my opinion, totally inapplicable to this case.
 
 
 47
 The file in this Court in No. 22,374 and No. 22,377 contains a photocopy of the written instructions of the Warden of the Atlanta Penitentiary dated November 18, 1964, directing that a designated conference room be set aside from 10 A.M. until 10:45 A.M. each Sunday morning as a meeting place for bona fide members of the Muslim faith, and further providing that the Islamic Muslim daily prayer book and copies of the Kuran be furnished on request to bona fide members of the faith.
 
 
 48
 It was further directed that a staff member be in continuous attendance during the regularly scheduled services and the group will not be permitted to preach racism or hate against any other religious sect or ethnic group.
 
 
 49
 It is elemental that we are entitled to take judicial notice of our own records and files. Thus we know that all these petitioners have been given the relief above indicated, making even less advisable the invocation of mandamus.
 
 
 50
 I see nothing wrong with the Warden's restrictions against preaching racism or religious hatred. Racial hatred and religious intolerance are at total odds with the Constitution of the United States. It necessarily follows that no court is required to lend its assistance to those activities, even if they be pursued under the guise of religion, Cf. Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 87 L.Ed. 645, reh. den. 321 U.S. 804, 64 S.Ct. 784, 88 L.Ed. 1090, wherein it was stated that "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease * * *."
 
 
 51
 I would affirm the Judgment of the District Court.