**James F. BUSH, Appellant,**

v.

**James REID and Clarence Reid, Appellees.**

**No. 1841.**

Supreme Court of Alaska.

Dec. 14, 1973.

Barry Donnellan, Anchorage, Stephen C. Cowper, Fairbanks, Edgar Paul Boyko, Edgar Paul Boyko & Associates, Anchorage, for appellant.

No appearance for appellees.

Robert Wagstaff as amicus curiae, for American Civil Liberties Union.

Before RABINOWITZ, Chief Justice, BOOCHEVER, Justice, and EBEN H. LEWIS, Superior Court Judge.

## OPINION

BOOCHEVER, Justice.

James F. Bush originally filed this lawsuit in superior court to recover damages for injuries received in an automobile accident. At the time of the accident and the filing of the suit, appellant Bush was a felon on parole. The Reids, as defendants below, filed, and the superior court subsequently granted, a motion to dismiss the complaint on the ground that AS 11.05.-070 [1] suspends the civil rights of a person sentenced to imprisonment in the penitentiary for a term less than life. Bush here appeals on the grounds that the superior court erred in interpreting the statute, or, alternatively, that the statute if interpreted to bar appellant from access to the courts, violates the Alaska and United States constitutions.

AS 11.05.070 and AS 33.15.190 [2] when read together clearly indicate that a parol-

---

1. AS 11.05.070 provides:
   A judgment of imprisonment in the penitentiary for a term less than for life suspends the civil rights of the person sentenced, and forfeits all public offices and all private trusts, authority, or power during the term or duration of imprisonment.

2. AS 33.15.190 provides:
   The board may permit a parolee to return to his home if it is in the state, or to go elsewhere in the state, upon such terms and conditions, including personal reports from the paroled person as the board prescribes. The board may permit the parolee

ee's civil rights, similarly to those of a prisoner, remain suspended during the time he is in the custody of the parole board. The first question presented to this court is whether the right to bring and maintain a civil suit is among the civil rights suspended by AS 11.05.070.

▮ The general rule has been that in a jurisdiction where a convict loses his civil rights, he cannot sue while under such disability.[3] This rule has recently been applied and upheld in Kansas and Oregon.[4] New York courts consistently have held

that Penal Code Sec. 510, which suspends all rights of a prisoner while incarcerated comprises the right to file a civil lawsuit.[5] Cases which allow convicts the right to initiate civil actions have been decided in the absence of statutes suspending civil rights such as the one in point here.[6]

Bush argues, however, that this court should consider the use of *"the* civil rights" instead of *"all* civil rights" in AS 11.05.070 (Kansas, Oregon, and New York provisions use "all civil rights"), and liberally construe the provision so as not to ex-

to go into another state upon terms and conditions as the board prescribes, and subject to the provisions of any compact executed under the authority of ch. 10 of this title and amendments to it. A prisoner released on parole remains in the legal custody of the board until the expiration of the maximum term or terms to which he was sentenced, less good time allowances provided by law. While in the custody of the board, a person is subject to the disabilities imposed by AS 11.05.070.

3. Quick v. Western Ry. of Alabama, 207 Ala. 376, 92 So. 608, 609 (1922); Sullivan v. Prudential Ins. Co. of America, 131 Me. 228, 160 A. 777, 779 (1932); McLaughlin v. McLaughlin, 228 Mo. 635, 129 S.W. 21, 23 (1910); Avery v. Everett, 110 N.Y. 317, 18 N.E. 148, 154 (1888); Miller v. Turner, 64 N.D. 463, 253 N.W. 437, 439 (1934).

The supporting rationale for this suspension of civil rights of prisoners is explained in Tabor v. Hardwick, 224 F.2d 526, 529 (5th Cir. 1955), cert. denied, 350 U.S. 971, 76 S.Ct. 445, 100 L.Ed. 843 (1956):

We do not question the wisdom of the rule recognized by such decisions as Ex parte Hull [, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034] and White v. Ragen [, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348], supra, that penitentiary inmates ought to have their right to inquire into the validity of their restraint of personal liberty and freedom zealously safeguarded by the courts, but we think that the principle of the cases so holding should not be extended to give them an absolute and unrestricted right to file any civil action they might desire. Otherwise, penitentiary wardens and the courts might be swamped with an endless number of unnecessary and even spurious law suits filed by inmates in remote jurisdictions in the hope of obtaining leave to appear at the hearing of any such case, with the consequent disruption of prison routine and concomitant hazard of escape from custody. As a matter of necessity, however regret-

table the rule may be, it is well settled that, "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." [citations omitted].

4. Hammett v. San Ore Construction Co., 195 Kan. 122, 402 P.2d 820 (1965); Chinn v. State, 6 Or.App. 350, 488 P.2d 293 (1971). In *Hammett*, 402 P.2d at 822, the Kansas court said:

Under well-established authorities it is recognized (1) that the use of court process is a "civil right" within a statute providing that sentence of imprisonment in state prison for a term less than life suspends all civil rights during the term of sentence and (2) that the right to sue is a right which is suspended under a statute providing that sentence of imprisonment in state prison for a term less than life suspends all civil rights during term of sentence. See Nastasi v. State, 186 Misc. 1051, 61 N.Y.S.2d 438; Lipschultz v. State, 192 Misc. 70, 78 N.Y. S.2d 731; Application of White, 166 Misc. 481, 2 N.Y.S.2d 582.

5. Lynch v. Quinlan, 65 Misc.2d 236, 317 N.Y. S.2d 216 (1970); In re Cirello's Estate, 50 Misc.2d 1007, 271 N.Y.S.2d 841 (1966); Glena v. State, 207 Misc. 776, 138 N.Y.S.2d 857 (1955); Lipschultz v. State, 192 Misc. 70, 78 N.Y.S.2d 731 (1948); Grant v. State, 192 Misc. 45, 77 N.Y.S.2d 756 (1948). These cases are inapplicable to an action commenced before incarceration because so applied, they would violate § 79–b of the New York Civil Rights Law, McKinney's Consol.Laws, c. 6, a statutory due process clause. Thomas v. Grupposo, 73 Misc.2d 427, 341 N.Y.S.2d 819, 822 (1973). The statute does not deprive *parolees* of civil process. *See* Glena v. State, 138 N.Y.S.2d at 858; Grant v. State, 77 N. Y.S.2d at 758.

6. *See* Panko v. Endicott Johnson Corp., 24 F.Supp. 678 (N.D.N.Y.1938); Bosteder v. Duling, 115 Neb. 557, 213 N.W. 809 (1927).

tend denial of civil access to the courts. The substitution of "the" for "all", while seemingly minor, does allow the possibility that certain civil rights might not be denied. We have been given no authority for such distinction however, and find no indication that this was the intent of the legislature. In light of this absence of indications of such legislative intent, and the strong common-law authority holding that convicts are denied civil access to the courts,[7] we hold that AS 11.05.070 and AS 33.15.190 combine to deny parolees the right to initiate civil suit.

Such finding, however, does not conclude our inquiry. We must also consider Bush's contention that these statutes, if read to bar him from access to the courts, are contrary to the Alaska and United States constitutions. Bush argues that AS 11.05.070 provides for "cruel and unusual punishment"[8] and violates the due process clauses of the Alaska and United States constitutions.[9] While we do not find the punishment provided to be so severe as to constitute "cruel and unusual punishment",[10] nor the statute void for vagueness, we do hold that AS 33.15.190 violates the due process and equal protection clauses of the Alaska and United States constitutions insofar as it prohibits parolees from having access to the civil courts.

Both art. I, sec. 7 of the Alaska Constitution and sec. 1 of the fourteenth amendment of the United States Constitution prohibit the state from depriving any person of "life, liberty, or property, without due process of law." Bush contends that the right to bring a civil action for damages is property, and that therefore the suspension of such right is a deprivation of property without due process of law.

Any suggestion that a parolee was deprived by his custodial status of standing to assert a denial of due process was dissolved by the United States Supreme Court in Morrissey v. Brewer.[11] The nature of protection due "depends on the extent to which an individual will be 'condemned to suffer grievous loss.'"[12] The loss suffered must have some relationship to a "liberty or property" interest within the ambit of the fourteenth amendment.[13]

Because Bush seeks to overcome a statutory denial of access to the courts as a

---

7. There is no Alaska case involving the right of an imprisoned convict to have access to the courts. We do not here reach that issue.

8. Art. I, sec. 12 of the Alaska Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Penal administration shall be based on the principle of reformation and upon the need for protecting the public.

The eighth amendment to the United States Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

9. Art. I, sec. 7 of the Alaska Constitution provides:

No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

Sec. 1 of the fourteenth amendment to the United States Constitution provides in relevant part:

[N]or shall any State deprive any person of life, liberty, or property, without due process of law; . . .

10. This court in Lanier v. State, 486 P.2d 981, 990 (Alaska 1971), defined "cruel and unusual punishment" to be that punishment which is:

inhuman and barbarous, or so disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice. [citing Green v. State, 390 P.2d 433, 435 (Alaska 1964)].

11. 408 U.S. 471, 481–482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494–495 (1972). This does not mean that the due process rights of ordinary citizens may not be somewhat modified by the necessities of the criminal correction process. Sostre v. McGinnis, 442 F.2d 178, 188–189 (2nd Cir. 1971), cert. denied sub nom. Sostre v. Oswald, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972), cert. denied sub nom. Oswald v. Sostre, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972).

12. Morrissey v. Brewer, 408 U.S. at 481, 92 S.Ct. at 2600, 33 L.Ed.2d at 494.

13. *Id.*

plaintiff, the starting point of our analysis must be Boddie v. Connecticut,[14] in which the United States Supreme Court held that a state could not deprive indigents of access to divorce tribunals by imposing a prohibitive filing fee.

Justice Harlan, writing for the Court in *Boddie,* recognized the centrality of the concept of due process in maintaining both order and justice in the resolution of the disputes which inevitably arise from human interaction. Upon that jurisprudential foundation he built the holding that where the state commands a monopoly over the only available legitimate means of dispute settlement and the relationship underlying the dispute is warp and woof of the fabric of society, the state may not deny access to the forum of settlement on account of poverty.[15]

We note superficial distinctions between the social context of the instant dispute and that in *Boddie,* but upon reflection we conclude that the denial of access to the civil courts rends the fabric of justice as surely here as in *Boddie.*

Although the collision of automobiles results in a dispute at first subject to private resolution, often the reconciliation of competing interests may be accomplished only by resort to the formal judicial process. The state exercises a monopoly over that paramount process where the "private structuring of individual relationships and repair of their breach" has failed.[16] Unlike the overburdened debtor, who was held in United States v. Kras[17] to have such

adequate redress outside the Bankruptcy Act[18] that his right of access to bankruptcy adjudication could be denied by the imposition of a substantial filing fee, the injured citizen has no recourse but to the courts when those who caused his injuries refuse to enter a consensual resolution of the conflict, whether out of recalcitrance or in the assertion of a good faith defense. We further distinguish *Kras* because the prospective bankrupt could pay the required filing fee in unburdensome $2.00 per week installments;[19] here the bar is absolute and no ameliorative device exists. No "recognized, effective alternatives for the adjustment of differences remain."[20] Thus the initial element of the *Boddie* analysis exists here.

The second aspect of *Boddie* dealt with the importance of the marital relationship. Based on the hierarchy of social values the resolution of personal injury lawsuits might not be considered of such grave importance so as to justify invalidating this statute, although in the instance of a gravely-injured plaintiff, the very quality of his future existence may be dependent upon the outcome. In *Boddie* Justice Harlan sought the fundamental human relationship doctrine to satisfy the due process clause only because denial of access to a divorce court does not impair a simpler "liberty or property" interest. United States v. Kras instructs that one must search for a fundamental interest justifying access to the particular dispute resolution process in order to actuate the *Boddie*

---

14. 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

15. *Id.* at 374–376, 383, 91 S.Ct. at 784–785, 28 L.Ed.2d at 117, 122.

16. *Id.* at 375–376, 91 S.Ct. at 785, 28 L.Ed.2d at 117.

17. 409 U.S. 434, 443–444, 93 S.Ct. 631, 637, 34 L.Ed.2d 626, 635–636 (1973).

18. Because the actual disposition of payment remains in the debtor's control, consensual settlement was a viable option in *Kras*; mere non-action could settle the controversy forcibly to the debtor through the passage of the

statutory limitations period; a state-law composition of creditors could be effected. Further, discharge in bankruptcy would effect no change in the debtor's ability to obtain and hold sufficient funds for life's necessities because of statutory protection of wages and welfare payments from assignment or civil process. United States v. Kras, 409 U.S. at 445, 93 S.Ct. at 638, 34 L.Ed.2d at 636.

19. United States v. Kras, 409 U.S. at 445, 93 S.Ct. at 638, 34 L.Ed.2d at 636.

20. Boddie v. Connecticut, 401 U.S. at 376, 91 S.Ct. at 785, 28 L.Ed.2d at 117.

doctrine.[21] The Court in *Kras* held that debtors do not have a fundamental right to an adjudication of bankruptcy. But here we must apply the test of *Morrissey:* whether the individual is "condemned to suffer grievous loss" in conjunction with an interest "within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."[22]

■ We begin with the understanding that a chose in action, such as Bush's claim for personal injuries, is a form of property.[23] The judicial process exists to reduce inchoate claims to money judgment where private settlement is unavailing (or to extinguish them as non-meritorious). Judgments may be executed or assigned for substantially their face value, presuming solvency of the debtor. Unlitigated claims for personal injury have slight market value. Deprivation of access to the courts thus denies both the ability to reduce the claim to a money judgment and the ability to collect the claim or otherwise convert it into property of an appreciable value and liquid nature during the parole status. Because the only reasonable use of the "property" represented by an unlitigated claim is reduction to judgment followed by collection or assignment, deprivation of that use deprives the claimant of the whole value of his property so long as he remains *non sui juris*.[24] The deprivation is no less severe than the taking of disputed wages or property during the pendency of litigation.[25] Additionally, the denial of access to the courts creates an unfair leverage in the potential defendant who may avoid or reduce a meritorious claim because the ordinarily penurious state of the parolee dictates an early settlement on whatever terms are available.[26] Finally, the risk of loss of the entire property due to staleness of evidence, loss of witnesses and similar complications constitutes an unreasonable burden. We note that the tolling of the statute of limitations[27] during disability prevents the baldest of takings; nevertheless, the disability robs the parolee of the opportunity to be heard "at a meaningful time and in a meaningful manner."[28]

We conclude that a parolee denied access to the judicial process by reason of his custodial status is thereby condemned to suffer a grievous loss of property rights protected by the due process clause of the fourteenth amendment of the United States Constitution. We further declare that we would reach an identical result in interpreting the due process provisions of the Alaska Constitution alone, finding as we do that Justice Harlan's insightful analysis of the social compact applies with equal force to our constitution. We have several times held that "we are free, and we are under a duty, to develop additional constitutional rights and privileges under our Alaska Constitution." Finding as we do that "civil death" of parolees violates the

---

21. United States v. Kras, 409 U.S. at 445–447, 93 S.Ct. at 638–639, 34 L.Ed.2d at 636–637.

22. Morrissey v. Brewer, 408 U.S. at 481, 92 S.Ct. at 2600, 33 L.Ed.2d at 494.

23. Sanner v. Trustees of Sheppard and Enoch Pratt Hospital, 278 F.Supp. 138, 142 (D.Md. 1968) ; Martinez v. Fox Valley Bus Lines, Inc., 17 F.Supp. 576, 577 (N.D.Ill.1936) ; City of Phoenix v. Dickson, 40 Ariz. 403, 12 P.2d 618, 619 (1932) ; Rosane v. Senger, 112 Colo. 363, 149 P.2d 372, 375 (1944).

24. Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349, 354 (1966) (concurring opinion of Harlan, J.). *See* Fuentes v. Shevin, 407 U.S. 67, 84–85, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556, 572–573 (1972).

25. *See* Fuentes v. Shevin, 407 U.S. 67, 84–85, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556, 572–573 (1972) ; Sniadach v. Family Finance Corp. of Bay View, 395 U.S. at 342, 89 S.Ct. at 1823, 23 L.Ed.2d at 354.

26. *See* Sniadach v. Family Finance Corp. of Bay View, 395 U.S. at 339–341, 89 S.Ct. at 1821–1822, 23 L.Ed.2d at 352–353.

27. AS 09.10.140.

28. Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971), quoting from Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965) and Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 873 (1950).

spirit and intention of the Alaska Constitution, we would not be impeded in our constitutional progress by a narrower holding of the United States Supreme Court.[29]

The finding of a deprivation of a property right does not conclude a due process analysis; the assessment of what process is due requires a balancing of the individual's interest against the state's justification for its enactment.[30] Denial of incarcerated felons' access to the civil judicial process has been justified by fears of disruption of prison routine, spurious litigation commenced in the hope of spending a few hours beyond the bars of prison and increased risks of escape by prisoners en route to hearings.[31] Where the litigant is a parolee, to state these arguments is to reveal their absurdity.[32] No argument has been pressed that engaging in civil litigation will encourage recidivism or otherwise interfere with the rehabilitation of an offender. If one may anticipate any effect, it is that active participation in the system of justice will develop added respect for the system and a sense of belonging in the mainstream of society.

Given this utter vacancy of rationale for the continued deprivation of access to the judicial process, we hold that AS 33.15.190, insofar as it suspends, in conjunction with AS 11.05.070, the access of parolees to civil courts, violates the due process clauses of the Alaska and United States constitutions.

Additionally, we find that AS 33.15.190 denies parolees "the equal protection of the laws", in violation of the fourteenth amendment to the United States Constitution,[33] and art. I, sec. 1 of the Alaska Constitution.[34] The state, by AS 33.15.190 and 11.05.070, denies parolees the right of access to the civil courts possessed by other persons. We find that the state interest in denying parolees this right satisfies neither the "compelling state interest" test applied when a "fundamental right" is at stake,[35] nor the traditional,

29. Baker v. City of Fairbanks, 471 P.2d 386, 401–402 (Alaska 1970); R. L. R. v. State, 487 P.2d 27 (Alaska 1971); see Roberts v. State, 458 P.2d 340, 342 (Alaska 1969).

30. Morrissey v. Brewer, 408 U.S. at 483, 92 S.Ct. at 2594, 33 L.Ed.2d at 495–496; Bell v. Burson, 402 U.S. 535, 540–541, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90, 95 (1971); Boddie v. Connecticut, 401 U.S. at 381–383, 91 S.Ct. at 783, 28 L.Ed.2d at 121; Sniadach v. Family Finance Corp. of Bay View, 395 U.S. at 339, 89 S.Ct. at 1821, 23 L.Ed.2d at 352.

31. Tabor v. Hardwick, 224 F.2d 526, 529 '(5th Cir. 1955), cert. denied, 350 U.S. 971, 76 S.Ct. 445, 100 L.Ed. 843 (1956).

32. See Morrissey v. Brewer, 408 U.S. at 478, 92 S.Ct. at 2598, 33 L.Ed.2d at 492–493 and our discussion infra notes 37 to 39 and accompanying text.

33. The fourteenth amendment provides in relevant part:

No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.

34. Art. I, sec. 1 provides:

This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

In Leege v. Martin, 379 P.2d 447, 451–452 (Alaska 1963), this court explained:

The statutory denial of a stay is also without legal effect because it deprives appellees of "equal rights, opportunities, and protection under the law", to which they are entitled under art. I, § 1 of the state constitution. This constitutional guarantee of equal treatment, like the equal protection clause of the federal constitution, is the embodiment of the fundamental principle that all men are equal before the law. It is a prohibition against laws which, in their application, make unjust distinctions between persons. As to this case, the guarantee of equality of treatment prohibits legislation which denies to one group of persons the enjoyment of certain rights which are afforded to another group, when considering the purpose of the legislation, there is no reasonable basis for not treating both groups the same. [footnote omitted].

See Alex v. State, 484 P.2d 677, 684 (Alaska 1971).

35. See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1966). In Ramirez v. Brown, 9 Cal.3d 199, 107 Cal.Rptr. 137, 507 P.2d 1345, 1355–1357 (Cal.1973), the California Supreme Court held that the disenfranchisement of ex-felons was not necessary

more lenient "rational basis" test[36] otherwise applicable.

The state may have a reasonable basis for denying convicts while imprisoned access to civil courts for the reasons expressed in Tabor v. Hardwick [37] already discussed in this opinion. But the administration of a parole system differs so substantially from the administration of a prison that these reasons cannot logically support the "civil death" of parolees.[38] The conditions and purposes of parole were recently described by the United States Supreme Court in Morrissey v. Brewer:

> To accomplish the purpose of parole, those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms. These conditions restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen. Typically parolees are forbidden to use liquor or to have associations or correspondence with certain categories of undesirable persons. Typically also they must seek permission from their parole officers before engaging in specified activities, such as changing employment or living quarters, marrying, acquiring or operating a motor vehicle, traveling outside the community and incurring substantial indebtedness. . . .
>
> The parole officers are part of the administrative system designed to assist parolees and to offer them guidance. The conditions of parole serve a dual purpose; they prohibit, either absolutely or conditionally, behavior which is deemed dangerous to the restoration of the individual into normal society. And through the requirement of reporting to the parole officer and seeking guidance and permission before doing many things, the officer is provided with information about the parolee and an opportunity to advise him. The combination puts the parole officer into the position in which he can try to guide the parolee into constructive development. [footnote omitted].[39]

Thus, although the state has a legitimate interest in restricting some activities of parolees, prohibiting a parolee from initiating civil actions has no logical connection with such an interest. The only interest here pertinent is preventing behavior which is detrimental to the restoration of a parolee into normal society. Since the parolee is no longer incarcerated, there is no justification based on the furthering of smooth penal administration. The parolee's ability to avail himself of the civil judicial process in order to vindicate his rights and protect his property interests in fact furthers, rather than restricts, the parolee's constructive development and restoration into normal society.

Failing to find either a "compelling state interest" or a "rational basis" for the state's denial to parolees of the right to initiate civil actions, we therefore hold that AS 33.15.190 denies parolees the "equal protection of the laws", in violation of the Alaska and United States constitutions.

For the reasons expressed above, we reverse the judgment of the superior court and remand the case for proceedings in accordance with this opinion.

Reversed and remanded.

CONNOR, ERWIN and FITZGERALD, JJ., not participating.

to the compelling interest of preserving the purity of elections.

36. *See* Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

37. 224 F.2d 526 (5th Cir. 1955), cert. denied 350 U.S. 971, 76 S.Ct. 445, 100 L.Ed. 843 (1956). *See* Chinn v. State, 6 Or.App. 350, 488 P.2d 293 (1971); Harrell v. State, 17 Misc.2d 950, 188 N.Y.S.2d 683 (1959). We do not, however, express an opinion now as to the state's interest in denying prisoners access to civil courts. We instead confine our holding here to the rights of parolees.

38. *Cf.* Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356, 1369 (1948).

39. 408 U.S. at 478, 92 S.Ct. at 2598, 33 L.Ed.2d at 192–193.