Donald W. LAWRENCE; David C. Allen; William L. R. Harmon; Donald H. McClelland; William J. Martell; Jimmie E. Raines; Edwin I. Schwartz; and all others similarly situated

v.

Olin G. BLACKWELL, Warden, U. S. Penitentiary, Atlanta et al.

Civ. A. No. 11472.

United States District Court
N. D. Georgia,
Atlanta Division.

March 31, 1969.

Bruce R. Jacob, Thomas E. Baynes, Jr., William H. Traylor, Atlanta, Ga., for plaintiffs.

Theodore E. Smith, Asst. U. S. Atty., Atlanta, Ga., for the United States.

Thomas Wade Bruton, Atty. Gen., Jacob L. Safron, Staff Atty., Dept. of Justice, State of N. C., Raleigh, N. C., for defendants Bounds and Hayes.

Henry Wade, Criminal Dist. Atty., Malcolm Dade, Asst. Dist. Atty., Dallas, Tex., for defendants Decker and Wade.

Wm. E. Spence, Sol. Gen., Hinson McAuliffe, Frank A. Bowers, Asst. Sol. Gens., Crim. Court of Fulton County, Atlanta, Ga., for defendant Spence.

MacDonald Gallion, Atty. Gen. of Ala., David W. Clark, Asst. Atty. Gen., for defendant Morgan.

## ORDER

EDENFIELD, District Judge.

This case presents important questions concerning the effect of state detainers on the right of federal prisoners to a speedy trial under the Sixth Amendment. The case is brought as a class action by several inmates at the United States Penitentiary in Atlanta, each of whom allegedly has criminal charges pending against him in one or more state courts. The state defendants have each filed detainers against these inmates pursuant to the outstanding state charges. These detainers are filed with the Sheriff of Fulton County, Georgia, and in the records office of the Atlanta federal penitentiary.

These prisoners seek to represent the class of Atlanta penitentiary inmates with state charges outstanding for at least the length of time they have been pending against the named plaintiffs. Because of previous actions in the case, Plaintiffs Lawrence, Crosby, and Martell, and those individuals representing Jefferson County and Dallas County, Texas, and Pima County, Arizona, have been stricken as parties.

Plaintiff Allen is currently serving a six-year federal sentence imposed in June, 1966. He has had Florida charges continuously pending against him for grand larceny since 1965. Plaintiff Harmon has been in continuous federal custody since a two-year sentence was imposed in April, 1967. Since May, 1963, he has had a pending Florida charge for breaking and entering and grand larceny. Plaintiff McClelland is serving a federal sentence imposed in August, 1966. In December, 1965, McClelland was charged by Florida authorities with forgery, and in July, 1966, with cheating and swindling by the State of Georgia, all of which are still pending. Plaintiff Raines is in federal custody pursuant to an eight-year sentence levied in June, 1966. In September, 1966, he was charged with escape in North Carolina, a charge still pending. Plaintiff Schwartz is serving a three and one-half year sentence, given in September, 1967, and has outstanding a fraudulent check charge by Fulton County, Georgia, as well as a charge of cheating, swindling, and unlawfully disposing of mortgaged property, filed by Houston County, Georgia, and a charge of forgery by the State of Alabama. All of these prisoners have detainers issued against them, pursuant to state charges, except Raines, who has a "fugitive warrant" against him, and all except Plaintiff Allen allege affirmative action in seeking a speedy trial. Plaintiffs ask for declaratory and injunctive relief for themselves and their class, under 28 U.S.C. § 2201, 5 U.S.C. § 702, and 42 U.S.C. § 1983. Specifically, they ask this court to declare that the restrictions imposed upon them at the federal penitentiary because of the detainers violate their constitutional rights and ask that their enforcement be enjoined. They also ask for a declaration that the pending detainers are null and void and that an injunction be issued forbidding defendants from "filing, giving effect to, honoring, pursuing or enforcing in any manner or method the detainers now pending against plaintiffs and the criminal charges represented by said detainers." The defendants do not deny the existence of the pending state charges or the plaintiffs' demands for a speedy trial.

Plaintiffs' allegations are met by summary judgment motions filed by the United States and by the defendant States. The brief of the United States seeks to justify the prison restrictions imposed because of the outstanding state detainers. The States argue that this court lacks jurisdiction over them and that federal prisoners have no consti-

tutional right to a speedy trial on state charges.

## I. JURISDICTION OVER STATES

■■ The states of Texas, Florida, Alabama, and North Carolina are beyond the jurisdiction of this court, absent a special provision. The plaintiffs urge that Rule 4(d) (7) of the Federal Rules of Civil Procedure permits service of process either in the manner prescribed by federal law or in "the manner prescribed by the law of the state in which the district court is held." Therefore, they contend that the Georgia long-arm statute, Ga.Code § 24–113.1, can be used to secure jurisdiction of the non-resident defendants. While Rule 4(d) (7) does permit the use of applicable state laws, the court holds that the Georgia long-arm statute cannot be used to secure the necessary service of process over the representatives of the states outside Georgia.

■ First, it overtaxes the imagination to conceive that the long-arm statute was designed to cover situations such as this one. The statute itself provides that:

"A court of this State may exercise personal jurisdiction over any non-resident, or his executor or administrator, as to cause of action arising from any of the acts, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he

"(a) Transacts any business within this State; or

"(b) Commits a tortious act within this State, except as to a cause of action for defamation of character arising from the act; or

"(c) Owns, uses or possesses any real property situated within this State."

Plaintiffs argue that subsection (a) is satisfied because the out-of-state defendants are involved in the business of apprehending the plaintiffs and work through the Sheriff of Fulton County, who, as their agent, accepts their detainers. This interpretation of subsection (a) stretches the normal meaning of "business" out of all proportion. Plaintiffs cite no authority to support their unusual construction and the court can think of none. Plaintiffs also urge that subsection (b) of § 24–113.1 is satisfied since the defendants breached a duty by failing to bring the plaintiffs to trial. They contend that a common law tort is not necessary only a breach of a duty making defendants liable in damages—yet they have nowhere in their complaint asked for damages. Any harm to the plaintiffs here comes from the inaction of the defendants, none of which was "within this State". Moreover, the court cannot conceive that a state's failure to grant a speedy trial is a "tortious act" within the purpose and intent of the statute. Plaintiffs also argue that the Sheriff of Fulton County, who accepted the defendants' detainers, could be served as the agent of the defendants. But, the Sheriff does not become an agent for purposes of service simply by recognizing the existence of a state's intent to secure custody of a prisoner now in another jurisdiction.[1]

Nevertheless, failure to secure jurisdiction of these defendants is not fatal to the plaintiffs' action. As will become evident, the court will not compel any action by these defendants but merely declare the rights of the plaintiffs in an action in which the court clearly has

---

1. "A detainer may be defined as a warrant filed against a person already in custody with the purpose of insuring that, after the prisoner has completed his present term, he will be available to the authority which has placed the detainer. Wardens of institutions holding men who have de-tainers on them invariably recognize these warrants and notify the authorities placing them of the impending release of the prisoner." Handbook on Interstate Crime Control, Ch. V, quoted in United States v. Candelaria, 131 F.Supp. 797, 805 (S.D.Cal., 1955).

jurisdiction. It will be left to other courts to effectuate these rights.

## II. RIGHT TO SPEEDY TRIAL FOR FEDERAL PRISONER ON STATE CHARGE AND REMEDY TO EFFECTUATE THE RIGHT

Until recently it would have been clear that a federal prisoner had no right to a Sixth Amendment speedy trial on state charges, and therefore could not remove any detainer lodged in furtherance of the state charge. Troyan v. United States Government, 240 F.Supp. 383 (D.Kan., 1964); United States ex rel. Masucci v. Follette, 272 F.Supp. 563 (S.D.N.Y., 1967); Gregory v. Page, 289 F,Supp. 316 (E.D.Okl., 1968). The law seemed clear that:

"When the court of one sovereign takes a person into its custody on a criminal charge he remains in the jurisdiction of that sovereign until it has been exhausted, to the exclusion of the courts of the other sovereign. That rule rests upon principles of comity, and it exists between federal and state courts. * * * But either the federal or a state government may voluntarily surrender its prisoner to the other without the consent of the prisoner, and in such circumstances the question of jurisdiction and custody is purely one of comity between the two sovereigns, not a personal right of the prisoner which he can assert in a proceeding of this kind." Wall v. Hudspeth, 108 F.2d 865, 866 (10th Cir., 1940).

Thus a state could have rested until the prisoner's federal custody terminated before affording him a trial on pending state charges. Henderson v. Circuit Court, 392 F.2d 551 (5th Cir., 1968); McCary v. Kansas, 281 F.2d 185 (10th Cir., 1960), cert. denied, 364 U.S. 850, 81 S.Ct. 94, 5 L.Ed.2d 73 (1960). As recently as January 23, 1969, the Fifth Circuit held that:

"Appellant has no right at this time to assert in federal court the denial of a speedy state trial." May v. State of Georgia, No. 26736, 5th Cir., Jan. 23, 1969.

■ However, by a two-step process, a federal prisoner now has a Sixth Amendment right to a speedy trial on a pending state charge. The first step in the process occurred with the Supreme Court's holding in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). For the first time, the Sixth Amendment guarantee of a speedy trial was held applicable to the states through the Fourteenth Amendment. Thus, in that case, North Carolina could not indefinitely postpone prosecution on an indictment, without stated justification, over the defendant's objections. The next step was taken by the Supreme Court in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). There, the petitioner, a federal prisoner, periodically requested a trial on a 1960 theft charge, entered in Harris County, Texas. In 1967, the petitioner filed with the Harris County trial court a motion to dismiss the charge against him for want of prosecution. When no action ensued on his motion, the petitioner brought a mandamus proceeding in the Texas Supreme Court asking that the 1960 charge be dismissed. The mandamus motion was refused, whereupon the petitioner successfully sought certiorari in the United States Supreme Court and obtained a reversal. It had long been recognized in most states and by the federal courts that a sovereign could not deny an accused person a speedy trial simply because he was incarcerated in *that* sovereign's prison under a prior conviction. See, *e. g.*, Annot., 118 A.L.R. 1037 (1939); Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922). Yet, it was felt that a different rule must apply when the prisoner was under the custody of *another* sovereign, since the sovereign seeking to try the prisoner did not have the power and authority over the prisoner to bring him to trial. This rule applied even if the custodial sovereign agreed to allow the other sovereign to try their prisoner. See *e. g.*, Cooper v.

State, 400 S.W.2d 890 (Tex., 1966); Ex parte Schechtel, 103 Colo. 77, 82 P.2d 762 (1938); Annot., 118 A.L.R. 1037 (1939). Smith v. Hooey recognized this reasoning as specious. The Supreme Court noted that the same considerations which required a speedy trial for an unincarcerated man applied to one imprisoned by another sovereign. Moreover, the Supreme Court recognized that theoretical doctrines of sovereign power and authority could not submerge the practical reality that the petitioner could be brought to trial, due to the consent of his federal custodians.

Therefore, the Court held that:

"Upon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial."

In effect, the Court extended the right to speedy trial enforceable against the States, granted in *Klopfer*, supra, to prisoners in the custody of another sovereign.

The court has no doubt that Smith v. Hooey is controlling in the instant action. This court's problem is to effectuate a remedy which will best perfect the right granted by Smith v. Hooey. The court will first discuss the impact of that holding on the detainer system employed at the Atlanta federal penitentiary.

1. Impact of Smith v. Hooey on Use of Detainers to Limit Prisoner Privileges.

Plaintiffs contend that the detainers lodged against them pursuant to their outstanding state charges limit their eligibility for parole, remove their opportunity, if found guilty, to have their state sentences run concurrently with their federal service; require them to live in more restricted quarters than other prisoners; negate participation in pre-release work details or transfer to minimum-custody institutions; and adversely affect rehabilitative efforts.

It appears from the record that federal prisoners with detainers against them have more restricted privileges. The former Director of the United States Bureau of Prisons has stated that:

"Today the prisoners with detainers are evaluated individually but there remains a tendency to consider them escape risks and to assign them accordingly. In many instances this evaluation and decision may be correct, for the detainer can aggravate the escape potentiality of a prisoner." Bennett, "The Last Full Ounce," 23 Fed.Prob. No. 2, at 20–21 (1959).

It is not unheard of for the federal courts to react strongly against the detainer system. Thus, for example, in United States v. Candelaria, supra, the court found that because of a state detainer, the prisoner in question was denied certain privileges. The state detainer was for the same offense for which the prisoner was in federal custody. Because of the adverse effect of the detainer, the judge drastically reduced the prisoner's federal sentence to permit an early trial in state court. The court recognized the conclusion of many experts, expressed in the Handbook on Interstate Crime Control, supra:

"We know now that the prison administrator's task is to rehabilitate the offender and to make plans for him to return to the community as a self-respecting, law-abiding citizen. However, this task is difficult to accomplish in many cases because we have allowed the detainer, inherited from medieval thinking, to remain in our law enforcement system without making adjustments necessary to prevent hampering of the modern correctional system.

"While it would seem proper that authorities in quest of a violator of the law should have every assistance in returning him to their jurisdiction, nevertheless the detainer system now operates to the detriment of society all too often. The difficulties inherent in the existing detainer system affect the judges, the institutional officials, the paroling authorities and the individual himself.

"The prison administrator is thwarted in his efforts toward rehabilitation. The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program. He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps. In many jurisdictions he is not eligible for parole; there is little hope for his release after an optimum period of training and treatment, when he is ready for return to society with an excellent possibility that he will not offend again. Instead, he often becomes embittered with continued institutionalization and the objective of the correctional system is defeated."

Plaintiffs launch a broadside at the entire detainer system, contending it amounts to cruel and unusual punishment and a deprivation of due process. In response, the United States urges that the restrictions placed on federal prisoners with outstanding detainers come within the discretionary authority of the Attorney General, under 18 U.S.C. § 4001, and the Bureau of Prisons, under 18 U.S.C. § 4042, and are justified, since vocational training is difficult if a prisoner faces an indeterminate sentence in the future; custody must be more restrictive since a prisoner is a greater escape risk if he faces a lengthy future sentence; detainers are bad risks for work release and unescorted furlough programs; and a release program is difficult to plan because of the prospect of arrest by other authorities. However, the Government stresses that it does not deny parole consideration to detainers and will regularly grant them parole if they are otherwise good risks. The court notes that by regulation, the existence of detainers no longer automatically precludes federal parole consideration. 28 C.F.R. § 2.9 (1968).

■■■ While the state detainers placed on these plaintiffs restrict their privileges, the court cannot declare those restrictions per se capricious. The prison authorities have made the judgment, based on experience and expertise, that prisoners with detainers warrant more restrictive treatment. Even if we might disagree, the court cannot quarrel with their judgment, for the administration of the prisons is within the purview of the Executive, not the Judicial, branch. The courts will only intervene in cases of extreme hardship. Tabor v. Hardwick, 224 F.2d 526 (5th Cir., 1955), dismissed, 350 U.S. 890, 76 S.Ct. 148, 100 L.Ed. 784 (1955); see also, Hess v. Blackwell, 409 F.2d 362, 5th Cir., March 21, 1969. This is not a judicial excuse for failure to act. Rather, the court's reluctance to intervene goes to the heart of the checks and balances of our federal system. Whatever the court's personal views, we would be exceeding our constitutional function were we to substitute our opinion for the considered judgment of the prison authorities. What is really in question here is the detainer system which leads to the above restrictions, and while the system has certain unsatisfactory results, it serves a useful function in a federal system. These results, however unsatisfactory from a rehabilitative standpoint, do not rise to the level of an extreme and unreasonable hardship, under ordinary circumstances.

■■■ However, certain modifications in this judgment are necessary to effectuate the right extended in Smith v. Hooey. We hold that if the states involved have not made a "diligent, good-faith effort" to bring the prisoners to trial within a reasonable time after this order, the Atlanta federal penitentiary authorities must remove the restrictions flowing from these detainers. This court cannot permit the unreasonable delay of the defendants to continue the effectuation of restrictions on these prisoners, which would not otherwise be imposed. Of course, if certain restrictions are imposed for reasons independent of the detainers, they would be unaffected by this order. What amounts to a lack of good-faith effort to bring

these prisoners to trial will vary with such circumstances as the docket load in the state courts. Therefore, it would be unwise for the court to establish a specific period of time within which trial must be held. The prison authorities should check with the defendants shortly after receipt of this order to make certain the states are taking steps to docket the cases for trial, as well as make periodic reviews of their progress thereafter. When diligence is lacking, the prison authorities must then permit these prisoners to enjoy the privileges to which they would otherwise be entitled, absent the detainers. The court does not state that the restrictions are per se unreasonable. The court only holds that if the right extended in Smith v. Hooey is to be given content, a state's continued failure to make a good-faith effort to secure prisoners a speedy trial on state charges must not result in continuance of prison restrictions flowing from those charges.

2. Impact of Smith v. Hooey on Underlying Indictments.

While Smith v. Hooey clearly establishes a right to speedy trial for federal prisoners with pending state charges, it gives precious little practical guidance to the lower courts about the effectuation of that right. The Supreme Court simply remanded the case to the Texas Supreme Court for "further proceedings not inconsistent with this opinion." The Texas Court's only duty may be to set aside its judgment denying petitioner's right to a speedy trial, "for the purpose of giving the petitioner a trial, and that if a trial is given the case should not be dismissed." This is the view taken by Mr. Justice Black in his con-

curring opinion in *Hooey*. The Court's opinion may purposely "leave open the ultimate question whether Texas must dismiss the criminal proceeding against the petitioner", as Mr. Justice White suggests in his concurrence. He felt that since the Texas courts had denied the existence of a right to speedy trial, they never reached the question of an unconstitutional delay. Yet another possible reading of the majority opinion is that the Texas courts will have to immediately release the petitioner, due to an unreasonable nine-year delay in trial. Mr. Justice Harlan's separate opinion presents the only concrete guidance for the lower courts. He states that Texas did not automatically forfeit the right to try the petitioner, but that if Texas still wished to try him, it "should do so forthwith. At trial, if petitioner makes a prima facie showing that he has in fact been prejudiced by the State's delay, I would then shift to the State the burden of proving the contrary."

Despite the uncertainty created by the Supreme Court's opinion, we hold that the plaintiffs have the following remedies to effectuate their right to a speedy trial: The state defendants are under a constitutional obligation to make a diligent, good-faith effort to try the plaintiffs within a reasonable time. Defendants will not automatically lose the right to bring the plaintiffs to trial, if they act within a reasonable time, but at their trials, the plaintiffs may raise their prior denial of a speedy trial. It will be for the state trial courts to decide what the plaintiffs must show to merit dismissal of their indictments.[2] If the defendants do *not* make the effort required by Smith

---

2. Courts are split on whether actual prejudice must be shown or delay in trial is per se prejudicial. Courts have stated on numerous occasions that the mere passage of time does not amount to the denial of the Sixth Amendment's right to speedy trial. Taylor v. United States, 238 F.2d 259 (DCA, 1956). Whether the delay amounts to an unconstitutional deprivation depends upon circumstances, for ordinary expedition, not

mere speed, is essential. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Reece v. United States, 337 F.2d 852 (5th Cir., 1964). Many courts specifically state that a delay must be prejudicial in the preparation of a defense to merit dismissal of charges. Mann v. United States, 113 U.S.App. D.C. 27, 304 F.2d 394 (1962), cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed. 2d 127 (1962); United States v. Beard,

v. Hooey to bring the plaintiffs to trial, appropriate courts in the states may grant either post-conviction relief, following belated convictions, or pre-conviction relief, after the states have permitted a reasonable time to elapse without movement toward trial. Considerations of federalism and lack of jurisdiction over the state defendants preclude recourse to this court for either pre- or post-conviction relief. Moreover, this court does not conceive that under Smith v. Hooey it can now either dismiss the state indictments or hold an independent hearing on the possible prejudice arising from the delays in trial.

■■■■ Several factors have influenced our decision. First, in the federal system, motions to dismiss the indictment for unnecessary delay in trial are addressed to the trial court. Rule 48(b) of the Federal Rules of Criminal Procedure; Terlikowski v. United States, 379 F.2d 501 (8th Cir., 1967), cert. denied, 389 U.S. 1008, 88 S.Ct. 569, 19 L.Ed.2d 604 (1967); United States v. McWilliams, 82 U.S.App.D.C. 259, 163 F.2d 695 (1947).[3] Considerations of federalism and peculiar state statutes on the question of speedy trial make this rule particularly appropriate in cases, such as this one, where a state

charge is pending. A state trial judge, not a federal district court, should initially decide the question of denial of the right to speedy trial. A second consideration in our decision was the common practice of federal courts, in the pre-Smith v. Hooey era, to permit prisoners to raise the speedy trial question at the state court level when they were actually tried. Henderson v. Circuit Court, supra; Bistram v. People of State of Minnesota, 330 F.2d 450 (8th Cir., 1964); State of Maryland v. Kurek, 233 F.Supp. 431 (D.Md., 1964); Evans v. County of Delaware, Commonwealth of Penn., 390 F.2d 617 (3d Cir., 1968), cert. denied, 393 U.S. 873, 89 S.Ct. 164, 21 L.Ed.2d 143 (1968). Smith v. Hooey should not change this practice.

■■■■ Third, nothing in Smith v. Hooey requires a different result from our decision to require plaintiffs to raise the speedy trial issue at the state trial court level, for in that case the Supreme Court remanded the petitioner to the Texas Supreme Court, rather than make an independent judgment of whether the right to speedy trial had been violated. In our case, it would seem particularly inappropriate for this court to hear the question of dismissal of the state indictments for deprivation of the right to a

381 F.2d 329 (6th Cir., 1967). Several courts have enumerated factors to be used in deciding whether a denial of speedy trial has ensued, such as the length and reason for the delay, its prejudice to the defendant, and any possible waiver of the right. United States v. Owens-Corning Fiberglas Corp., 271 F.Supp. 561 (N.D.Cal., 1967); Buatte v. United States, 350 F.2d 389, 394 (9th Cir., 1965), cert. denied, 385 U.S. 856, 87 S.Ct. 104, 17 L.Ed.2d 83 (1966). Yet, there are some decisions which seem to hold that the delay in trial may be so substantial by itself that it is either prima facie prejudicial, United States v. Simmons, 338 F.2d 804 (2d Cir., 1964), cert. denied, 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965), or requires no showing of prejudice at all, United States v. Lustman, 258 F.2d 475 (2d Cir., 1958), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). Also see language in Reece v. United States, supra, which

indicates that cases of per se unreasonableness may arise. Application of the appropriate standard will, at least initially, however, be a question for the state trial court, and therefore this court expresses no view on the controversy.

3. Despite a dictum in Frankel v. Woodrough, 7 F.2d 796 (8th Cir., 1925), that the right to a speedy trial can only be enforced through mandamus to compel a trial, the great majority of federal cases recognized that a defendant may secure a dismissal of charges for an unreasonable delay. Petition of Provoo, 17 F.R.D. 183 (D.Md., 1955), aff'd., 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). There are, of course, other motions which might be available pursuant to right to speedy trial, in addition to a motion to dismiss. Annot., 58 A.L.R., 1510 (1929); Fowler v. Hunter, 164 F.2d 668 (10th Cir., 1947), cert. denied, 333 U.S. 868, 68 S.Ct. 785, 92 L.Ed. 1146 (1948).

speedy trial, when the defendants are not subject to this court's jurisdiction. Fourth, the Fifth Circuit's decision in May v. Georgia, 409 F.2d 203, No. 27049, 5th Cir., March 20, 1969, is relevant. In that case the appellant was serving a 20-year sentence in the Florida penitentiary, which began in July, 1962. He was indicted by Georgia in February, 1965, on three counts of robbery. He contended that his right to a speedy trial was violated by Georgia's four-year failure to prosecute him. The Fifth Circuit found Smith v. Hooey, supra, controlling, and remanded the case to the district court to determine if the appellant had made the requisite demand upon Georgia for speedy trial. The Court stated that if sufficient demand had been made, the appellant's motion must be granted, *subject* to the right of Georgia to try him within a reasonable time, citing Justice Harlan's separate opinion in Smith v. Hooey, supra. This is clear evidence that in the instant case we should not, at least initially, dismiss the indictments nor hold our own hearing on the prejudice arising from the delay in trial. Rather, the states may still proceed to try the plaintiffs, *if they do so within a reasonable time.* At such time as a state trial is afforded, the Fifth Circuit made it clear, as have we, that:

> "Nothing said herein precludes appellant from attempting to show at a state trial on these charges that he has been prejudiced by the state's delay. But we do not in any way suggest how such issue, if raised, should be resolved, leaving that to the state trial judge for determination." May v. Georgia, supra, at 205 of 409 F.2d.

Several further points must be resolved. Nothing the court has said in this order is applicable to plaintiff Schwartz, since his own allegations do not indicate that he has made any demand for a speedy trial on the states involved. It is clear that the plaintiff must take affirmative action to secure a speedy trial before he can argue its denial. United States v. Gladding, 265 F.Supp. 850 (S.D.N.Y., 1966). "The requirement of a demand stresses that the right to a speedy trial is not designed as a sword for defendant's escape, but rather as a shield for his protection." Note, The Right to a Speedy Criminal Trial, 57 Col.L.Rev. 846, 853 (1957).

Additionally, it appears that plaintiff Raines has an escape warrant charge against him. According to the North Carolina defendants, a fugitive warrant rather than a detainer has been placed against Raines. However, any differences between an escape warrant and a detainer cannot permit North Carolina to avoid the diligence required by Smith v. Hooey, supra, if they intend to try Raines for his alleged escape. While this court, because of jurisdictional problems, cannot enforce Raines' right to a speedy trial even if no such diligence is used and he is later convicted by North Carolina, an appropriate court in North Carolina would be open to him. Moreover, if the State fails to make a good-faith effort to try Raines within a reasonable time, any prison restrictions stemming directly from the fugitive warrant must be terminated by Atlanta prison authorities. The court is hopeful that North Carolina, as well as the other great states named as defendants here, will be moved by the clear dictate of Smith v. Hooey to make diligent steps to afford plaintiffs a speedy trial within a reasonable time.

Plaintiffs have asked for a class action. However, it appears to the court that a class action would be improper in this case, since the obligation of the states and the penitentiary authorities is dependent upon notice to the states of the requisite need for a speedy trial. Yet, the members of the class plaintiffs seek to represent may have detainers lodged against them by states not represented in this proceeding, who would therefore have no notice of this order. They obviously could not be expected to make a diligent, good-faith effort to bring their detainers to trial. Therefore a class action is inappropriate and the

relief afforded plaintiffs shall be purely personal. A class action is not necessary to the effectuation of plaintiffs' rights.

The state defendants' motions to dismiss and the Government's motion to dismiss or grant summary judgment are denied.