**James William SMITH, a/k/a James Anthony Sacchino, Petitioner,**

v.

**Robert C. LONDERHOLM, Attorney General for the State of Kansas, Respondent.**

**Civ. A. No. L–884.**

United States District Court
D. Kansas.

Sept. 9, 1969.

No attorney for petitioner.

Kent Frizzell, Atty. Gen., State of Kansas, Edward G. Collister, Jr., Asst. Atty. Gen., State of Kansas, Topeka, Kan., for respondent.

## MEMORANDUM AND ORDER DISMISSING ACTION

WESLEY E. BROWN, District Judge.

In this, his twelfth, habeas corpus action, the Court granted petitioner leave to proceed in forma pauperis, and on July 7, 1969 an Order for Rule to Show Cause was issued. Respondent Londerholm, Attorney General for the State of Kansas (Honorable Kent Frizzell is now Attorney General for the State of Kansas) has filed Answer and Response, Smith has filed Traverse, and the matter is now before the Court for reconsideration in light of these additional pleadings.

It appears that Smith is currently in custody of the Warden at the Virginia State Prison Farm, State Farm, Virginia, 23160. The details of his offense against the laws of the State of Virginia do not appear. In his petition for habeas corpus relief, Smith asserts that he has been charged with "motel fraud", a felony under the laws of Kansas, and that a detainer warrant was filed in Virginia by Kansas authorities in December, 1967. As grounds for relief, Smith asserts that the State of Kansas has denied his constitutional right to speedy trial upon this charge, and therefore the detainer is unlawful and void because of the lack of prosecution. Asserting that he has been denied privileges and trusty status and is unable to obtain serious parole consideration in Virginia because of the Kansas detainer, Smith seeks an order from this Court which would direct the Respondent Attorney General to dismiss the pending charge and to withdraw the detainer.

The Attorney General admits that the charge and detainer at issue have been pending since 1967. He asserts however that the first time Smith made any request that the charge be disposed of was

by way of a Motion for Speedy Trial filed in the District Court of Sedgwick County, Kansas, on May 26, 1969, and that since that time, the County Attorney's Office has been, and is, in the process of obtaining custody of Smith for purposes of trial in Kansas. Smith admits that he demanded a "speedy trial" on May 26, 1969, and that preparations for trial are now being made by the County Attorney for Sedgwick County. However, Smith contends that he made an unsuccessful demand for speedy trial in November, 1968, by letter, apparently directed to the Office of the County Attorney, that the delay in trial is unreasonable upon its face, and as a matter of law, and that he is entitled to be free of all restraints which may be imposed by reason of the Kansas warrant and detainer. The Respondent in turn asserts that a diligent, good faith effort to return Smith for trial is now in process, and there has been no unreasonable delay in preparing for trial since receipt of Smith's demand in May, 1969.

The ultimate issue between Smith and the State of Kansas depends finally, of course, upon the interpretation and application of Smith v. Hooey (1969) 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, wherein the Supreme Court determined that the Sixth Amendment Right to Speedy Trial is applicable to the states and obligatory on demand, even though the accused is serving a sentence imposed by another sovereign. In arriving at this decision, the Court gave little practical guidance for effectuating this right, and both state and federal district courts are now faced with the problem of fashioning proper guidelines for proceeding in an orderly manner. See e.g., Lawrence v. Blackwell (N.D.Georgia 1969) 298 F.Supp. 708, 715.[1]

However, before considering whether or not there has been unreasona-

ble delay in prosecution, and the effect of such delay, if any, upon the present right of the State of Kansas to proceed with Smith's prosecution, the Court must first inquire into its jurisdiction over the subject matter of this action. It appears to this Court that the problem of territorial jurisdiction frequently will appear in conjunction with controversies involving a right to "speedy trial" for at least in the case of detainers, there will always be two sovereigns, and two jurisdictions, involved. Here, we have Virginia, the one with actual custody of the prisoner, while the other, Kansas, claims the right to custody at some future time.

At this point, the implications of the recent decision of the Supreme Court in Peyton v. Rowe (1968) 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 must be considered. There, the Supreme Court overruled McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238, and discarded old notions of the type of "custody" required for purposes of habeas corpus jurisdiction, in that the prisoner need no longer claim a right to "immediate release". Peyton v. Rowe further sanctioned, and in fact, requires, a liberal interpretation of the language of Title 28 U.S.C.A. §§ 2241(c) (3), 2243, and the Courts have the duty "to fashion appropriate relief other than immediate release." Soon after the decision in Peyton v. Rowe, various Courts determined that its principles cover questioned detainers, and a prisoner may seek relief by habeas corpus in situations where it is alleged that the conviction underlying the detainer is constitutionally void. United States ex rel. Van Scoten v. Commonwealth of Pa. (3 Cir. 1968) 404 F.2d 767; George v. Nelson (9 Cir. 1969) 410 F.2d 1179, Word v. State of North Carolina (4 Cir. 1969) 406 F.2d 352, or where the detainer is upon a pending

---

[1] "While Smith v. Hooey clearly establishes a right to speedy trial for federal prisoners with pending state charges, it gives precious little practical guidance to the lower courts about the effectuation of that right. * * *" In Law-

rence the District Court was concerned with the effect of the decision upon federal prisoners detained in the Atlanta federal penitentiary who had state detainers standing against them.

complaint or indictment, and the Smith v. Hooey question of "speedy trial" is an issue. *See* Lawrence v. Blackwell, *supra,* 298 F.Supp. 708.

For the purpose of this discussion, the Court will assume that the detainer in question does affect the nature, and perhaps the duration of Smith's incarceration in the State of Virginia, and that in this respect, Smith is "in custody" under the Kansas detainer for purposes of review of his claims in habeas corpus, all according to current interpretations of Peyton v. Rowe. However, such assumptions do not resolve the question of this Court's jurisdiction to adjudicate the Smith v. Hooey controversy between Mr. Smith and the State of Kansas, and this Court has serious doubt of its territorial jurisdiction to review Smith's claims in view of the language of 28 U.S.C.A. § 2241(a), and the ruling in Ahrens v. Clark (1948) 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898. Section 2241(a) provides:

> "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge *within their respective jurisdictions.* * * * " [Emphasis supplied.]

In Ahrens v. Clark, supra, it was squarely ruled that a federal district court has no jurisdiction to issue a writ of habeas corpus if the person "detained" is not within the territorial jurisdiction of the court where the petition is filed.[2] The *Ahrens* decision has never been overruled. Since Peyton v. Rowe, the Third and Ninth Circuits have ruled that *Ahrens* has continuing vitality and bars review of habeas corpus claims from prisoners who are not within the geographical territory of the Court in which the petition is filed. See United States

ex rel. Van Scoten v. Commonwealth of Pa., *supra,* 404 F.2d 767, and George v. Nelson, *supra,* 410 F.2d 1179, f. n. 5, p. 1181. The Fourth Circuit believes that the rule of Ahrens v. Clark has been eroded by other decisions, and that in view of new practical problems presented by Peyton v. Rowe and Smith v. Hooey, the federal district court in the state claiming a right to custody, is the proper, and more preferable forum for review of "speedy trial" questions. See Word v. State of North Carolina, *supra,* 406 F.2d 352. While the Fourth Circuit did not hold that the district of actual custody had *no* jurisdiction to review the claims, note was made of the practical problem presented when the state of actual custody, has no jurisdiction over out-of-state sovereigns and their officials who claim the right to custody at some future date. In Lawrence v. Blackwell, supra, a Georgia District Court ruled that, due to considerations of federalism and lack of jurisdiction over state defendants claiming custody by detainer, no pre- or postconviction review could be had *in that district* of speedy trial claims of federal prisoners, incarcerated at the Atlanta federal prison. The Court did indicate, however, that it possessed the necessary "in rem" jurisdiction to act upon the detainers themselves, and in the event of unreasonable delay *in prosecution* by the States, correction of records could be made at the federal penitentiary so that the prisoner would suffer no prejudice by reason of an out-of-date detainer. On the other hand, the Ninth Circuit, in George v. Nelson, *supra,* 410 F.2d 1179, solved the problem of jurisdiction over the out-of-state respondents by making the California Warden, with actual custody of the prisoner, the agent

---

2. "Although the writ is directed to the person in whose custody the party is detained * * * the statutory scheme contemplates a procedure which may bring the prisoner before the court. * * * It would take compelling reasons to conclude that Congress contemplated the production of prisoners from remote sec-

tions, perhaps thousands of miles from the District Court that issued the writ. The opportunities for escape afforded by travel, the cost of transportation, the administrative burden of such an undertaking negate such a purpose. * * * " (335 U.S. at 190, 68 S.Ct. at 1444, 92 L.Ed. at 1900)

for the sister state which claimed future custody by detainer.

In his habeas corpus petition, Smith asserts that territorial jurisdiction lies in this district for the reason that he is precluded from seeking relief in the federal district court of Virginia by reason of the Fourth Circuit decision in Word v. State of North Carolina, *supra,* and that the state courts in Kansas would be unable to afford relief because of his present confinement out-of-state.

Although the Court is not persuaded that it possesses territorial jurisdiction over Smith's claim, it is of the opinion that it is unnecessary to determine this question at this time. Without in any way intimating that the Court has such jurisdiction, it should be pointed out that Smith's action must be dismissed for the reason that he has failed to exhaust his remedies in the State of Kansas.

As noted, the controversy here is particularly between petitioner Smith, and the State of Kansas, and the State has never been afforded an opportunity to examine into new federal constitutional considerations which may be required by Peyton v. Rowe and Smith v. Hooey. It also appears that the State of Kansas is in fact in the process of affording Smith the relief which he requested by Motion—that is—a speedy trial. In the

event that Smith is of the opinion that the State has in some manner forfeited its right to try him upon the pending charge, he is free to raise this issue in the criminal proceedings now pending in Kansas, both at the trial level and on appeal. Certainly there is nothing in Smith v. Hooey which would excuse Smith from the requirement that he proceed in an orderly manner through the courts of the State of Kansas before seeking the aid of any federal district court. See Nolan v. Moseley (10th Cir. Sept. 3, 1969) # 161–68, unreported; Word v. State of North Carolina, *supra,* 406 F.2d at p. 361; Lawrence v. Blackwell, *supra,* 298 F.Supp. at 715–716.[3]

For the foregoing reasons, the Court concludes that Smith's petition is premature, and that the cause and action should be dismissed for failure to seek relief through the state courts of Kansas and to exhaust all state remedies available to him. Accordingly,

It is ordered that the cause and action be, and it is hereby dismissed. The Clerk is ordered to enter judgment accordingly, and the Clerk is further directed to send a copy of this Memorandum and Order to the petitioner and to the respondent, Attorney General of the State of Kansas.

---

3. In *Lawrence,* the Court set up the following sensible guidelines for handling "speedy trial" complaints of federal prisoners at the Atlanta Penitentiary, 298 F. Supp. at 715–716:

"Despite the uncertainty created by the Supreme Court's Opinion, [In Smith v. Hooey] we hold that the plaintiffs have the following remedies to effectuate their right to a speedy trial. The state defendants are under a constitutional obligation to make a diligent, good-faith effort to try the plaintiffs within a reasonable time. Defendants will not automatically lose the right to bring the plaintiffs to trial, if they act within a reasonable time, but at their trial, the plaintiffs may raise their prior denial of a speedy trial. *It will be for the state trial courts to decide what the plaintiffs must show to merit dismissal of their indictments.* If the defendants do not make the effort required

by Smith v. Hooey to bring the plaintiffs to trial, appropriate courts in the states may grant either post-conviction relief, following belated convictions, or pre-conviction relief, after the states have permitted a reasonable time to elapse without movement toward trial. *Considerations of federalism and lack of jurisdiction over the state defendants preclude recourse to this court for either pre- or post-conviction relief.* Moreover, this court does not conceive that under Smith v. Hooey it can now either dismiss the state indictments or hold an independent hearing on the possible prejudice arising from the delays in trial. * * *"

"(N)othing in Smith v. Hooey requires a different result from our decision to require plaintiffs to raise the speedy trial issue at the state trial court level. * * *" [Emphasis supplied.]