John Carns JONES, Plaintiff,

v.

Janice CUMMINGS, Warden of the Albion Correctional Facility, Albion, New York, Defendant.

No. CIV–81–1074E.

United States District Court, W. D. New York.

Dec. 28, 1981.

John Carns Jones, pro se.

Robert Abrams, Atty. Gen. of New York, Buffalo, N. Y., for defendant.

MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff, an inmate of the Albion (N.Y.) Correctional Facility having filed his *pro se* civil rights complaint, has moved this Court to order defendant to show cause why she should not be preliminarily enjoined from determining plaintiff's institutional status and eligibility for temporary release on the basis of a certain allegedly lapsed detainer issued by authorities of the State of Texas and from accepting a new detainer from Texas as a basis for such determinations. Plaintiff also seeks a temporary restraining order granting the described relief.

It appears from plaintiff's affidavit and from excerpts from a transcript supplied by plaintiff that, during a hearing on a pre-trial motion in connection with plaintiff's trial in the New York Supreme Court, Onondaga County, the presiding judge indicated that March 8, 1980 would be the "cut-off date" for plaintiff's extradition pursuant to a detainer issued in January 1980 by authorities in Wichita Falls, Texas. Plaintiff indicates

that since the February 20, 1980 pre-trial hearing there has been no action taken by either Texas or New York authorities regarding the detainer, notwithstanding these authorities' knowledge of plaintiff's whereabouts continuously since January 7, 1980. Plaintiff indicates that, notwithstanding his attorney's efforts to persuade the temporary release committee of the institution in which he is currently incarcerated that the Texas detainer had lapsed and could not serve as a basis for extradition of plaintiff, defendant has allowed this detainer to influence decisions as to plaintiff's eligibility for temporary releases such as work release, family furloughs and transfer to community halfway houses. Plaintiff further indicates that he has learned that, due to information requests by officials of the correctional facility and by the district attorney, the Texas authorities intend to issue a new detainer in the place of the one that allegedly has lapsed.

In order to grant the interlocutory relief requested by plaintiff (which would probably lead to his release from confinement in the face of administrative judgments that such release is not warranted), there should appear a stronger showing of the merit of plaintiff's claim than that which has been made. While Fed.R.Civ.P. rule 65(b) states that a temporary restraining order may issue to prevent immediate and irreparable injury (and such may be assumed where one is confined in contravention of federally secured rights), still the impending injury must appear to be clearly a legal injury, and particularly so when the court is requested to mandate that a prisoner be released from confinement. Thus, in the proper exercise of discretion, plaintiff's motion for a temporary restraining order must be denied.

The numerous decisions dealing with a claimed unlawful use of a detainer as a basis for denying favorable custodial status to a prisoner indicate that relief is appropriate only in the presence of an element absent at this juncture in the instant case—to wit, that the prisoner has made affirmative efforts to secure prompt action by the state issuing the detainer, as provided for by Article III of the interstate compact on detainers (codified at section 580.20 of New York's Criminal Procedure Law), or by other inquiries directed to the "receiving state," and that the "receiving state" has unjustifiably delayed in responding to such efforts by the prisoner. *See, e.g., McEachern v. Henderson,* 485 F.2d 694 (5th Cir. 1973); *Moulton v. Aaron,* 358 F.Supp. 256 (D.Minn.1973); *United States ex rel. Watson v. Norton,* 335 F.Supp. 1324 (D.Conn. 1971); *Becker v. State of Nebraska,* 310 F.Supp. 1275 (D.Neb.1970); *Weiss v. Blackwell,* 310 F.Supp. 360 (N.D.Ga.1969); *Smith v. Londerholm,* 304 F.Supp. 73 (D.Kan. 1969); *Lawrence v. Blackwell,* 298 F.Supp. 708 (N.D.Ga.1969). Although the rationale expressed in these cases for requiring exhaustion of such state remedies is the exhaustion prerequisite for federal habeas corpus relief, even if plaintiff's Complaint is to be treated as stating a civil rights claim under 42 U.S.C. § 1983 it is appropriate to require initial exhaustion of state administrative remedies where there is no showing that such would be inadequate to secure the relief sought (*see, Swan v. Stoneman,* 635 F.2d 97, 103–104 (2d Cir. 1980)). Plaintiff recognizes that he is unable to state any claim in this Court that the charges underlying the Texas detainer may not be prosecuted due to the Texas authorities' failure to adjudicate them speedily. Article III of the interstate compact on detainers provides plaintiff with a facially adequate remedy for securing such adjudication, following which the propriety or impropriety of determining plaintiff's institutional status on the basis of such charges will clearly appear, which would probably obviate the need for plaintiff to seek expungement of the detainers in this Court. Considerations of federal-state comity and judicial economy, which underlie the habeas corpus exhaustion requirement, equally support requiring plaintiff to seek adjudication of the Texas charges in the instant case as a prerequisite to expungement.

There is a suggestion in the transcript of proceedings in the New York Supreme

Court furnished by plaintiff that plaintiff's counsel in the proceedings in that court may have made such inquiries or demands of the Texas authorities as would satisfy the exhaustion requirement. If such evidence were before me, I would then be in a position to consider ordering that the extant detainer against plaintiff and any new detainer that might be issued, or the possibility of the issuance of such new detainer, not be used as a factor in determining plaintiff's institutional status after a date in the near future which would probably be set as a deadline for action by the Texas authorities to secure adjudication of the Texas charges. This procedure would be in line with that recommended or followed in the above-cited cases and seems a reasonable means to secure plaintiff's rights to due process of the law and a speedy trial by preventing the imposition of an unfavorable institutional status on the basis of neglected charges filed in another state. Absent such past inquiries or demands upon the Texas authorities, however, plaintiff is obliged to make such inquiries or demands and thereafter to await action by the Texas authorities within a reasonable time before renewing his demand in this Court for expungement. *See, Weiss v. Blackwell, supra,* 310 F.Supp. at 362–363.

I am not persuaded that the comments by the court in *Weiss v. Blackwell* did in fact refer to a detainer rather than to an extradition demand made pursuant to the uniform criminal extradition act, codified in New York at sections 570.02 to 570.66 of its Criminal Procedure Law. Sections 570.36 and 570.40 of the extradition act establish thirty- and sixty-day periods for incarceration pending action upon an extradition demand, which would explain the court's reference to those time periods. The procedural provisions for action by "receiving states" upon detainers contain no time limits except those triggered where the detainee has made a request for a speedy trial on the extra-state charges, undoubtedly for the reason that a detainer is issued where the individual sought by another state has already entered upon a term of imprisonment in the "sending state" (*see, e.g., Unit-*

*ed States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *United States v. Evans,* 423 F.Supp. 528, 531 (S.D.N.Y. 1976)). However, for present purposes I may assume (without deciding) that, even though the original "detainer" involved here was actually an extradition demand, the failure of the Texas authorities either to press that demand or take other action upon the Texas charges may in proper circumstances invoke the same constitutional guarantees involved where a prisoner has made a request for a speedy trial under the agreement on detainers, such request has not been complied with and the detainer has been used as a basis for determining the prisoner's institutional status. It may be noted that Article I of the agreement on detainers indicates that adverse consequences to prisoner rehabilitation and treatment programs flow from all unadjudicated charges against prisoners, not just from detainers reciting such charges. Accordingly, the foregoing discussion of the law pertinent to plaintiff's claim might apply in substance even if the original action by the Texas authorities was to make an extradition demand rather than to issue a detainer, a possibility which I find unnecessary to resolve at this time.

Plaintiff's motion for a temporary restraining order is therefore hereby ORDERED denied. Plaintiff's motion for an order to show cause is hereby ORDERED granted and defendant is ORDERED to show cause by affidavit(s) and/or memorandum(s), within twenty (20) days of the entry of this Memorandum and Order, why the Texas detainer should not be expunged from plaintiff's institutional records. Plaintiff may within such time submit further affidavits documenting any past efforts that may have been made by him or on his behalf to secure disposition of the Texas charges; plaintiff's time to submit such affidavits may be extended upon good cause shown therefor at plaintiff's request and by court order. Defendant may have fifteen (15) days to respond to any such further affidavits submitted by plaintiff.