James H. Boomer, J.
Plaintiff, Maxwell Zeigler, has been sentenced to serve weekends in the Monroe County Penitentiary for a period of one year. In this injunction action he seeks a preliminary injunction restraining the Superintendent of the Penitentiary from cutting his long hair. In his complaint he claims that he has “ a personal and constitutional right to the aspects of his appearance as embodied in his facial and head hair and that the cutting of such hair by the defendant would violate such guaranteed constitutional rights as equal protection of the laws, the right of privacy, the right of free expression and the right to be free from cruel and unusual punishment. ’ ’
As authority for the relief sought, plaintiff’s counsel cites the case of Ho Ah Kow v. Hunan (12 Fed. Cas. 252) decided in 1879 in the Federal Circuit Court of California. There, the Board of Supervisors of the City and County of San Francisco had enacted an ordinance requiring that every male person having been sentenced and imprisoned in the county jail shall have the hair of his head ‘ ‘ cut or clipped to an uniform length of one inch from the scalp thereof ”. Under this ordinance the Sheriff of San Francisco cut off the pigtail or “ queue ” of a Chinaman and the Chinaman sued the Sheriff for damages. The court held that the ordinance exceeded the authority of the Board of Supervisors and that it ‘1 was special legislation imposing a degrading and cruel punishment upon a class of persons who are entitled, alike with all other persons within the jurisdiction of the United States, to the equal protection of the laws.” It appeared from the complaint in that case that 1‘ it is the custom of Chinamen to shave the hair from the front of the head and to wear the remainder of it braided into a queue; that the deprivation of the queue is regarded by them as a mark of disgrace, and is attended, according to their religious faith, with misfortune and suffering after death; that the defendant knew of this custom and religious faith of the Chinese, and knew also that plaintiff venerated the custom and held the faith”. The class character of the legislation was obvious, for the .court stated, at page 255, ‘ ‘ The ordinance was intended only for the Chinese in San Francisco. This was avowed by the supervisors on its passage, and was so understood by every one. The ordinance *84 is known in the community as the ‘ Queue Ordinance,’ being so designated from its purpose to reach the queues of the Chinese, and is not enforced against any other persons. The reason advanced for its adoption, and now urged for its continuance, is, that only the dread of the loss of the queue will induce a Chinaman to pay his fine.”
Plaintiff’s counsel, in her brief, relies heavily on the following quotation from a footnote to that case as reported in 18 Am. Law. Beg. 685: ‘1 There is and can be no authority in the state to punish as criminal such practices and fashions as are indifferent in themselves, and the observance of which does not prejudice the community or interfere with the proper liberty of any of its members. No better illustration of one’s rightful liberty in this regard can be given than the fashion of wearing the hair. If the wearing of a queue can be made unlawful, so may be the wearing of curls by a lady, or a mustache by a beau, and the state may, at its discretion, fix a standard of hair-dressing to which all shall conform. The conclusive answer to any such legislation is, that it meddles with that which is no concern of the state, and therefore invades private right.”
With this portion of the footnote no one can disagree. But the footnote continues by asking the question, ‘1 But if the state cannot regulate the fashions of the hair of those outside the prisons, what right can it have to regulate them for persons in confinement under its laws? In other words, what is there in the fact, that one is undergoing confinement for a breach of the penal laws that can enlarge the authority of the state in this regard? ” This question, this court is called upon to answer.
‘ ‘ A prisoner of the state does not lose all his civil rights during and because of his incarceration.” (Jackson v. Bishop, 404 F. 2d 571, 576.) Our State Court of Appeals has stated, “ An individual, once validly convicted and placed under the jurisdiction of the Department of Correction (Correction Law, § 6), is not to be divested of all rights and unalterably abandoned and forgotten by the remainder of society * * *. The State’s right to detain a prisoner is entitled to no greater application than its correlative duty to protect him from unlawful and onerous treatment (Ann. 155 A. L. R. 145, 146), mental or physical.” (People ex rel. Brown v. Johnston, 9 N Y 2d 482, 485.)
In recent years, the courts have intervened to protect the constitutional rights of prisoners. They have voided prison regulations which restrict a prisoner’s right to free access to the courts (Johnson v. Avery, 393 U. S. 483; Ex parte Hull, 312 U. S. 546) and those which unreasonably curtail the practice of reli *85 gion by prison inmates (Cooper v. Pate, 378 U. S. 546; Walker v. Blackwell, 360 F. 2d 66. Pierce v. LaVallee, 293 F. 2d 233 ; Dowd v. United States ex ret. Cook, 340 U. S. 206). They have protected prisoners against racial (Jackson v. Godwin, 400 F. 2d 529; Lee v. Washington, 390 U. S. 333, 334; Rivers v. Royster, 360 F. 2d 592) and religious (Sewell v. Pegelow, 291 F. 2d 196; Pierce v. LaVallee, 293 F. 2d 233, supra) discrimination. And courts have held hearings upon prisoners’ claims that they have been subject to cruel and unusual punishment or cruel and inhuman treatment (Matter of Brabson v. Wilkins, 45 Misc 2d 286, mod. 25 A D 2d 610, affd. 19 N Y 2d 433, claim of denial of adequate dental treatment; Jackson v. Bishop, 404 F. 2d 571, supra, corporal punishment enjoined; Wright v. McMann, 387 F. 2d 519, hearing ordered on prisoner’s claim that he was forced to sleep nude on floor of barren, unsanitary cell; see, also, Hancock v. Avery, 301 F. Supp, 786; Holt v. Sarver, 309 F. Supp. 362; Jordan v. Fitzharris, 257 F. Supp. 674, where the courts condemned the unsanitary conditions of prison cells as cruel and unusual).
Nevertheless,11 (L)awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights ’ ’ (Price v. Johnston, 334 U. S. 266, 285; Brown v. Wainwright, 419 F. 2d 1376; Matter of Brown v. McGinnis, 10 N Y 2d 531). “ Stated simply, a man in jail is not a free man; the denial of his right to drink fully from the cup of freedom is the very hypo-stasis of confinement. * * * We must also recognize that even those rights which survive penal confinement may be diluted by peculiar institutional requirements of discipline, safety and security.” (Gittlemacker v. Prasse, 428 F. 2d 1, 3, 4.) Thus, even the right of a prison inmate to practice his religion is not absolute and is subject to reasonable curtailment if necessary for proper discipline and management of the prison (Matter of Brown v. McGinnis, 10 N Y 2d 531, 535, 536, supra; Gittlemacker v. Prasse, supra, p, 1). Prisoners’ mail may be intercepted and read and, (except prisoners’ letters to and from counsel, courts and public authorities concerning the legality of confinement and complaints about treatment in prison) may be censored, and restricted (Matter of Brabson v. Wilkins, 45 Misc 2d 286, 290-292, mod. 25 A D 2d 610, affd. 19 N Y 2d 433, 437, supra). A prisoner’s conversation with visitors may be electronically intercepted and his person and effects searched, for in prison ‘1 official surveillance has traditionally been the order of the day.” (Lanza v. New York, 370 U. S. 139, 143). And solitary *86 confinement as a disciplinary measure is not per se unlawful (Sostre v. McGinnis, 442 F. 2d 178; Novak v. Beto, 320 F. Supp. 1206).
In school cases the courts have disagreed as to whether or not public school officials may limit the length of students’ hair. In Breen v. Kahl (419 F. 2d 1034), the United States Court of Appeals for the Seventh Circuit held that the right to wear one’s hair at any length or in any distinctive manner is a right of personal freedom protected by the United States Constitution and that the school board had not shown sufficient justification to limit that right by imposing upon high school students a dress code regulating the length of hair. To the same effect, see Richards v. Thurston (424 F. 2d 1281). The Court of Appeals for the Fifth Circuit, on the other hand, upheld the action of a school board in refusing high school enrollment to a prospective student when he refused to cut his long hair to comply with school regulations (Ferrell v. Dallas Ind. School Dist. (392 F. 2d 697). And the Supreme Judicial Court of Massachusetts, in affirming the right of a school board to suspend a high school student until he cut his long hair, stated, “We are of opinion that the unusual hair style of the plaintiff could disrupt and impede the maintenance of a proper classroom atmosphere or decorum.” (Leonard v. School Committee of Attleboro, 349 Mass. 704, 709-710). The Supreme Court of the United States has yet to pass upon the constitutionality of public school regulations governing the length of students’ hair (Long Hair and the Judicial Clippers, 11 Santa Clara Lawyer 92, 104; Tinker v. Des Moines School Dist., 393 U. S. 503, 507-508).
The courts seem to be in accord in upholding the- right of the Armed Forces to impose hair standards upon their members (Gianatasio v. Whyte, 426 F. 2d 908; Raderman v. Kaine, 411 F. 2d 1102). In the Raderman case the court wrote (p. 1104): “ If he [the plaintiff] asks: Does being in the Army curtail or suspend certain Constitutional rights ?, the answer is unqualifiedly ‘ yes ’. Of necessity, he is forced to surrender many important rights. He arises unwillingly at an unreasonable hour at the sound of a bugle unreasonably loud. From that moment on, his freedom of choice and will ceases to exist. He acts at the command of some person — -not a representative of his own choice — who gives commands to him which he does not like to obey. He is assigned to a squad and forced to associate with companions not of his election and frequently the chores which he may be ordered to perform are of a most menial nature. Yet the armed services, their officers and their manner of dis *87 cipline do serve an essential function in safeguarding the country. The need for discipline, with the attendant impairment of certain rights, is an important factor in fully discharging that duty.” In that case the court denied relief to a member of the ready reserve who was ordered to active duty because he refused to cut his hair to comply with Army regulations.
In prison cases, the United States Court of Appeals of the Fifth Circuit has sustained regulations requiring prisoners to shave twice a week and receive periodic haircuts (Brown v. Wainwright, 419 F. 2d 1376; Brooks v. Wainwright, 428 F. 2d 652). In the Brown case the court stated (p. 1377): “ For personal cleanliness and for personal identification under prison conditions, the rule appears to be neither unreasonable nor arbitrary. There is thus no Constitutional basis for our interference with this vital state function ’ ’. On the other hand, the United States District Court of Connecticut held that it was unconstitutional to require a prisoner awaiting trial to shave off his short one-quarter inch beard and goatee (Seale v. Manson, 326 F. Supp. 1375). That court stated (p. 1379): “ Of particular significance in this case, and a factor that weighs heavily on the scale, is that the plaintiffs are unconvicted detainees whom the law presumes innocent. Unlike convicted persons, the State’s only asserted interest with respect to these inmates to insure their appearance at trial, Davis v. Lindsay, 321 F. Supp. 1134, 1139 (S. D. N. Y. 1970); any limitation on their fundamental rights of unconvicted persons must find justification in the legitimate advancement of that interest.” The court concluded that it is reasonable for prison authorities to have regulations governing hair and beards, but it is not reasonable, without a showing of a lice hazard, to prohibit beards altogether.
The Seale holding was restricted to prisoners who were awaiting trial and were presumed innocent, yet even as to such prisoners the court held that the length of hair and beard could be restricted.
In his affidavit opposing this motion, the Superintendent of the Monroe County Penitentiary states that, in cutting prisoners’ hair, he is complying with a sanitary regulation promulgated by the New York State Commission of Correction which reads, ‘ ‘ Prisoners should be required to shave at least twice weekly, and all must be clean shaven; long hair should not be be permitted.” (7 NYCRR 5100.13 [e], adopted pursuant to Correction Law, § 46, subd. 7-a).
I agree with the holding in the Brown and Brooks cases (supra), that such a regulation, as to convicted prisoners, is *88 neither unreasonable nor arbitrary. Any constitutional right a person may have to the “ aspects of his appearance ” is one which may be limited during lawful incarceration after conviction. His right to wear a beard and long hair is outweighed by the interest of the State in maintaining sanitary conditions and discipline in prison facilities. Once we admit that some restriction of prisoners ’ hair and beard length is permissible, we then .get to a matter of degree. The United States District Court in Connecticut has held that a one-quarter inch mustache and goatee should be permitted. But what length and type of facial hair may be prohibited? And after such standards are set, what difficulties will there be in enforcing these standards? Must every convicted prisoner be given a hearing when he complains that the barber has cut his hair a fraction of an inch too short? I hold that, in the case of a convicted prisoner, long hair and all facial hair may be prohibited.
I cannot agree with plaintiff’s contention that the cutting of his long hair will constitute cruel and unusual punishment proscribed by the Eighth Amendment to the United States Constitution. “ The Eighth Amendment expresses the revulsion of civilized man against barbarous acts — the ‘ cry of horror ’ against man’s inhumanity to his fellow man.” (Robinson v. California, 370 U. S. 660, 676.) It proscribes acts “ of such a character or consequence as to shock general conscience or to be intolerable in fundamental fairness ”. (Jackson v. Bishop, 404 F. 2d 571, 578, supra). The prohibition of long hair and beards in prison is not barbarous nor does it shock general conscience.
Plaintiff further contends that by reason of the unequal application of the prison regulations against long hair he has been denied the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution. He invokes the principle, “ Though the law itself be fair upon its face and impartial in appearance, yet if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.” (Yick Wo v. Hopkins, 118 U. S. 356, 373-374.) There is no allegation here as there was in the Ho Ah Kow case (12 Fed. Cas. 252, supra) that this regulation was enforced solely against the members of a particular race. Plaintiff contends women prisoners are permitted to wear their hair long and so are some male prisoners. But this is far from the proof necessary to establish the purposeful and invidious discrimination proscribed by the *89 Fourteenth. Amendment. The Supreme Court has not yet held classification by sex to be a suspect classification and has upheld such classification whenever such distinction has some reasonable basis. (See Sex Discrimination and Equal Protection: Do we need a Constitutional Amendment?, 84 Harv. L. Rev., 1499, 1502-1506; Goesaert v. Cleary, 335 U. S. 464.) Traditionally women have worn their hair longer than men and have had experience from childhood in cleaning and caring for long hair. It is not unreasonable, therefore, that prison authorities allow women to grow their hair longer than men.
In further support of his contention that he has been denied equal protection of the laws, plaintiff has submitted affidavits alleging that three other prisoners serving weekend sentences have been allowed to grow long hair and that some black prisoners with “Afro” style hair have not been given “prison” haircuts. The respondent, on the other hand states that he knows of no exception to the rule prohibiting long hair and requiring prisoners to be clean shaven, except that, he has, since the granting of the restraining order in this case, suspended the rule as to weekend prisoners pending the determination of this motion.
Plaintiff’s proof does not show a “ pattern of discrimination consciously practiced, as in Yick Wo v. Hopkins (118 U. S. 356); it merely indicate [s] some nonenforcement ” as to a few other than plaintiff. (People v. Friedman, 302 N. Y. 75, 81). “A heavy burden rests on the [plaintiff] to establish conscious, intentional discrimination ”. (People v. Utica Daw’s Drug Co., 16 A D 2d 12, 19). The fact that a few prisoners may have been given more favorable treatment than plaintiff, standing alone, does not show that plaintiff is the victim of invidious discrimination. If such were the case, the enforcement of every law or regulation could be held unconstitutional upon proof that some enforcement official neglected or refused to enforce the laws or regulations against one hundred percent of the violators.
Even if the plaintiff’s complaint were construed to set forth a cause of action based upon invidious and intentional discrimination under the doctrine of Yick Wo v. Hopkins (supra), there is doubt that plaintiff would ultimately succeed in this action. The motion for a preliminary injunction, therefore, is denied.
Moreover, the complaint fails to contain allegations which may be construed to state a cause of action within the doctrine of Yick Wo v. Hopkins (supra). The complaint is dismissed, with leave to the plaintiff to serve an amended complaint, should he so desire, within 20 days after entry and service of an order dismissing the complaint.
*90 Plaintiff’s claim that the service of the cross notice of motion to dismiss was untimely is without merit. Although defendant did not give notice of 14 days required when service of a notice of motion is made hy mail (CPLR 2214, subd. [b]; 2103, subd. [b], par. 2) he did give the six-day notice required when a cross notice of motion is served hy mail (CPLR 2215; 2103, subd. [h], par. 2).
The restraining order contained in the order to show cause shall continue in effect until the entry and service of an order based upon this memorandum and for a further period of 20 days thereafter.