Matter of Sullivan (Gladstone R.) (2024 NY Slip Op 51637(U))

[*1]

Matter of Sullivan (Gladstone R.)

2024 NY Slip Op 51637(U)

Decided on November 27, 2024

Supreme Court, Queens County

Dunn, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 27, 2024
Supreme Court, Queens County

In the Matter of Martha Adams Sullivan, DSW, LMFT, MA 
 Executive Director Creedmoor Psychiatric Center, Petitioner, For an order authorizing the involuntary treatment of Gladstone R. 
 A patient at Creedmoor Psychiatric Center.

Index No. 501867/2024

For the petitioner:
Office of the Attorney General
28 Liberty Street
New York, New York 10005
By: Jose L. Velez, Esq.
For patient:
Mental Hygiene Legal Services
3333 New Hyde Park Road, Suite 306
New Hyde Park, New York 11042
By: Karl Chung, Esq.

Scott Dunn, J.

I. INTRODUCTION
On a number of occasions, the Creedmoor Psychiatric Center (the "Center" or "Petitioner) has experienced an infestation of lice. Gladstone R., a patient of long-standing at the Center, was found to have had lice in his hair on at least two occasions. He wears his hair in dreadlocks. The Center seeks an order permitting it to cut or shave his hair. The Center claims that this is necessary to protect him from another outbreak of lice and to protect others on the ward from the spread of lice. Gladstone R. objects to the Center's application and asserts, among other things, that if his hair is cut, he will die.

 II. FACTS
By Order to Show Cause dated October 10, 2024, the Center commenced this action, pursuant to Mental Hygiene Law ("MHL") § 33.03, seeking, in the main, an order relating to "proper medical procedure", permitting it to cut or shave the hair of Gladstone R. and to manually restrain and /or medicate him, if he resists or becomes aggressive or agitated when the [*2]Center seeks to cut or shave his hair. The Order to Show Cause also seeks authorization to shampoo his head and to administer medication for the treatment of lice to him. On prior occasions, Gladstone R., however, has permitted his head to be shampooed. He has never been offered medication to treat the lice.
On November 12, 2024, a hearing was held on the Center's application. The Center presented two witnesses. The first witness, Dr. Myo Kyaw, testified that she was Gladstone R.'s treating psychiatrist. Tr.[FN1]
at p. 6. She testified that he was admitted to the Center in 2002 and has a schizoaffective disorder of a bipolar type. Tr. at pp. 6, 8. She testified that he has been treated for psychosis, does not take care of himself, is often irritable and aggressive and has grandiose illusions, including his belief that he is a professor and president of the United States, and does not have insight into his mental illness or the behaviors relating to it. Tr. at pp. 7-10, 18.
Dr. Kyaw further testified that Gladstone R. had been successfully treated for a lice infestation in July of this year with shampoo and that he had been treated in 2022 for lice with shampoo as well. Tr. at pp. 7, 14-15, 19. She further testified that he did not appear to have lice now. Tr. at pp. 21-22, 24. Dr. Kyaw testified that while his head was not shaved in the past, that it was necessary to shave his hair now because he was initially resistant to the shampoo treatment, and primarily, to avoid reoccurrence. Tr. at pp. 11, 14, 16, 20. She also testified that the shaving was necessary to protect other people who come in contact with him from contracting lice. Tr. at p. 16. Finally, Dr. Kyaw testified that any side effects of the treatment would be minimal and that the benefits of the treatment outweighed any risk. Tr. at p. 17.
Dr. Tarik Naser also testified. He is an internal medicine doctor at the Center. Tr. at p. 25. Dr. Naser testified that nits and eggs precede the lice and that these often hide in the hair, and that the only way to suppress the lice, is to combine a treatment such as shampooing, with combing through the hair to ensure that no nits or eggs remain in it. Tr. at p. 26. Dr. Naser testified that in the case of Gladstone R., the shampoo cannot penetrate his hair very well (Tr. at p. 27), and further, that it is impossible to comb through his hair because of the locks. Tr. at p. 33.
Dr. Naser further testified that since June of this year, the Center has been required to treat the entire floor three times, finding five to seven patients with lice. Dr. Naser opined that everyone suspected that the lice were coming from Gladstone R. because the Center could not eradicate the lice entirely from him. Tr. at p. 27. Dr. Naser reiterated that Gladstone R. does not have lice now, but might have eggs and nits, but that it was impossible to make that determination. Tr. at pp. 31-33. Based on all of this, Dr. Naser testified that Gladstone R.'s hair needed to be cut or shaved as the only way to eradicate the lice was to be able to brush and comb through the hair. Tr. at p. 34. Dr. Naser acknowledged, however, that each time Gladstone R.'s hair was shampooed, that the lice was treated without the need to shave his hair. And further, that if the lice were found to have returned, this protocol could be repeated. Tr. at p. 37. Finally, Dr. Naser stated that he did not know of any regulations in effect at the Center which speak to the issue of hair or hairstyles regarding health, safety, or sanitation. Tr. at p. 35. The parties have not referenced any such regulations in support of their respective positions.
Finally, testimony was heard from Gladstone R. He testified that he owns America. He also testified that he is Uncle Sam and stated that he is a judge. Tr. at pp. 3, 43. He testified that [*3]lice have never been found in his hair. Tr. at p. 43. He also testified that if lice were found in his hair, that he would undergo a shampoo treatment. Tr. at p. 43. As for the shaving or cutting of his hair, he stated that if his hair was cut that it "will cause death on me." Tr. at p. 44. He further testified that his hair is grown for religious reasons, and that "God told [him] to keep [his] hair long," that through his hair, people see the power in him, and that people want to kill him and that the easiest way to do that is to cut off his locks. Tr. at p. 45. Indeed, he has stated to Dr. Kyaw that if his hair was cut he would die. In her testimony, Dr. Kyaw indicated that he did not elaborate on reasons for not wanting his hair to be cut, but that she did not observe him to be following any religious services for any type of religion. Tr. at p. 12.

III. LEGAL DISCUSSION

A. THE CENTER'S PARENS PATRIAE POWER TO CUT/SHAVE GLADSTONE R.'S HAIR
In this State, where, as here, an entity wishes to rely on its parens patriae power to force administration of a medical procedure on an unwilling patient, that entity must satisfy the test set forth in Rivers v. Katz (67 NY2d 485 [1986]). Pursuant to Rivers, as a threshold matter, the State bears the burden of demonstrating by clear and convincing evidence the patient's incapacity to make a treatment decision (67 NY2d at 497). Thereafter, if the court concludes that the patient lacks the capacity to determine the course of his own treatment, the State must then establish by clear and convincing evidence that "the proposed treatment is narrowly tailored to give substantive effect to the patient's liberty interest, taking into consideration all relevant circumstances, including the patient's best interests, the benefits to be gained from the treatment, the adverse side effects associated with the treatment and any less intrusive alternate treatments" (67 NY2d at 497-98).
As to the first prong, the Petitioner has established by clear and convincing evidence, that Gladstone R. lacks the capacity to make a treatment decision. This conclusion is supported by the testimony of Dr. Kyaw, the treating psychiatrist. But it is also amply supported by the testimony of Gladstone R., himself, who informed the Court that he owned America, was Uncle Sam, and that he never had lice.
As such, the Court is now called upon to consider whether the proposed treatment, the cutting/shaving of Gladstone R.'s hair, is "narrowly tailored to give substantive effect to [his] liberty interest, taking into consideration all relevant circumstances" (Rivers, 67 NY2d at 497). In this regard, the substantive effect of his liberty interest here, cannot be understated. It has been stated that, "[t]he right to wear one's hair in any desired matter is an ingredient of personal freedom protected by the United States Constitution . . ." (Christman v Skinner, 38 AD2d 884, 886 [4th Dept 1972] [dissent] [cases cited]). And further "[n]o better illustration of one's rightful liberty . . . can be given than the fashion of wearing the hair" (Zeigler v. Rigley, 67 Misc 2d 82, 84 [Sup Ct, Monroe County 1971]). Adding to all of this, is Gladstone R.'s claim, that his hair is an expression of his religious beliefs, a belief that if established, would accord him first amendment protections (see People v Lewis, 115 AD2d 597 [2d Dept 1985], affd 68 NY2d 923 [1986]); Overton v. Dept. of Correctional Servs., 131 Misc 2d 295, 297 [Sup Ct, Kings County 1986]). Finally, but also of great moment to the Court, is his fear that the cutting or shaving of his hair, will lead to his death.
On the other hand, the Center has established important reasons for cutting/shaving Gladstone R.'s hair. He may very well have eggs and knits in his hair, which could lead to the return of the lice. However, this cannot be determined without combing through his hair. And [*4]further, the combing cannot be affected without cutting/shaving his hair. And of course, it is in his interest and beneficial to him to prevent a return of the lice. And finally, the physical adverse effect of the actual cutting/shaving is minimal.
Interestingly enough, MHL§ 33.03(a), the statute relied upon by the Center in bringing this proceeding, provides that "[e]ach patient in a facility and each person receiving services for mental disability shall receive care and treatment that is suited to his needs and skillfully, safely and humanely administered with full respect for his dignity and personal integrity." With this admonition in mind, Gladstone R.'s liberty interests appear extremely weighty. And further reinforcing that conclusion, is that from a psychological perspective, cutting/shaving his hair does not appear to be in his best interests and could affect him adversely.
Fortunately here, from the facts presented, and purely from the perspective of the treatment of Gladstone R. through the Center's parens patriae power, and consistent with Rivers, there is an alternative that appears "less intrusive" (see Lewis, 115 AD2d at 598, affd 68 NY2d 923) [objectives of haircut could be achieved through less drastic alternatives]). The Center can likely achieve its goal of preventative treatment of Gladstone R. for lice by scheduling him for periodic shampooing and for treating him for the lice when it is detected. Further, the Center can treat any return of lice as soon as it is detected. Indeed, this method has proved successful for treating him over the years. Accordingly, and in sum given the above, the Petitioner has not established that its proposed treatment, cutting /shaving Gladstone R.'s hair is narrowly tailored to give substantive effect to his liberty interest taking into consideration all relevant circumstances as required by Rivers.
B. THE CENTER'S PARENS PATRIAE AND POLICE POWER TO CUT/SHAVE GLADSTONE R.'S HAIR
It is settled law, that under certain circumstances, the State may exercise its parens patriae and independent police power to care for those with mental illness in its control and custody and to protect others from a mentally ill person under its control and custody through forced medical treatment (see Addington v. Texas, 441 US 418, 426 [1979]; Rivers, 67 NY2d at 496). And of particular relevance here, that power has been suggested to be applicable, to deal with an outbreak of lice (see Christman, 38 AD2d at 887). However, to exercise that power, the State's interest must be compelling and be balanced against the liberty interest of the person (see Rivers, 67 NY2d at 496; Reno v Flores, 507 US 292, 301-302 [1993]).
Our analysis begins with the observation that, an involuntarily confined patient has a right to "conditions of reasonable care and safety" (Youngberg v Romeo, 457 US 307, 324 [1982]; see also Kulak v City of New York, 88 F3d 63, 77 [2d Cir 1996]). Accordingly, and consistent with this, the Center has an obligation to create an environment that is safe from a health, hygiene, and sanitary perspective for its patients. Prevention of an outbreak of lice would be consistent with this objective and therefore make the Center's interest compelling.
On the other hand, balanced against this interest, as shown above, Gladstone R. has a particularly strong liberty interest in preserving his hair, which is inextricably intertwined with his dignity and personal integrity. Moreover, the objective of the cutting/shaving of his hair, can likely be achieved through alternatives that infringe less drastically on his rights, such as regular shampooing or treating of the the lice when detected.
Accordingly, although the Center has established a compelling interest, it has failed to establish, under the circumstances present here, that that interest overrides Gladstone R.'s significant and unique liberty interests.
Accordingly, it is hereby,
ORDERED that the Petitioner's application is denied.
This constitutes the Decision and Order of the Court.
Dated: November 27, 2024
Long Island City, New York
SCOTT DUNN, J.S.C.

Footnotes

Footnote 1: "Tr." refers to the transcript of the hearing in this matter held on November 12, 2024.